JOYCE R. BRANDA
   Acting Assistant Attorney General
SUSAN RUDY
   Assistant Branch Director, Federal Programs Branch
BENJAMIN L. BERWICK
   Trial Attorney
   United States Department of Justice
   Civil Division, Federal Programs Branch
   20 Massachusetts Ave., NW
   Washington, DC 20530
   Tel: (202) 305-8573
   Fax: (202) 616-8470
   Benjamin.L.Berwick@usdoj.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AFSANEH ASHLEY TABADDOR<br><br>                Plaintiff,<br><br>        v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States; JEFFREY A. ROSENBLUM, in his official capacity as General Counsel, Executive Office for Immigration Review (EOIR); THOMAS Y.K. FONG, in his official capacity as Assistant Chief Immigration Judge, EOIR; MARLENE M. WAHOWIAK, in her official capacity as Associate General Counsel, EOIR; U.S. DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE FOR | Case No. 2:14-cv-6309-GW-CW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing on Motion<br>Date:    March 19, 2015<br>Time:    8:30 a.m.<br>Place:   312 North Spring Street, Los Angeles, CA 90012, Courtroom 10<br><br>Honorable George H. Wu |

1  IMMIGRATION REVIEW; OFFICE
   OF THE GENERAL COUNSEL;
2  OFFICE OF THE CHIEF
   IMMIGRATION JUDGE,[1]
3
              Defendants.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  [1] Defendant Jeffrey Rosenblum, named in his official capacity as the General
    Counsel of the Executive Office of Immigration Review, no longer serves in that
22  capacity.   Therefore, pursuant to Federal Rule of Civil Procedure 25(d), he is
    automatically substituted as a party with the current Acting General Counsel, Jean
23  King.  In any event, neither Mr. Rosenblum nor Ms. King is a proper defendant for
    an employment discrimination claim.  *See infra* note 20.

### NOTICE OF MOTION AND MOTION TO DISMISS

**To the Court and the Plaintiff**:

Please take notice that on March 19, 2015, at 8:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10 in the U.S. Courthouse located at 312 North Spring Street, Los Angeles, California, defendants will, and hereby do, move this Court for an order dismissing plaintiff's Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

This motion is based on this Notice of Motion and Motion To Dismiss, the attached Memorandum of Points and Authorities, and such other evidence and argument as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Civil Rule 7-3, which took place on January 7, 2015.

Date: January 13, 2015                    Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

SUSAN RUDY
Assistant Branch Director,
Federal Programs Branch

*/s/ Benjamin L. Berwick*
BENJAMIN L. BERWICK
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8573

1

Fax: (202) 616-8470
Benjamin.L.Berwick@usdoj.gov

2

*Attorneys for Defendant*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.....................................................................................vii

INTRODUCTION.................................................................................................1

BACKGROUND ..................................................................................................2

I.      Statutory and Regulatory Background ......................................................2

      A.     The Civil Service Reform Act ........................................................2

      B.     Immigration Judges .......................................................................5

II.     Plaintiff's Allegations and Procedural Background ..................................8

STANDARD OF REVIEW ...............................................................................10

ARGUMENT…….............................................................................................11

I.      The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims Because they Are Precluded by the CSRA.....................................................11

II.     Plaintiff's Title VII Claims Fail...........................................................17

      A.     Plaintiff's Title VII discrimination claim should be dismissed because it was not timely exhausted and because plaintiff has failed to adequately plead discrimination ...........................................17

            1.     Plaintiff did not exhaust her Title VII discrimination claim because she did not contact an EEO counselor within 45 days ........................................................................18

            2.     Plaintiff has not adequately pled a prima facie case of intentional discrimination because her allegations do not amount to an adverse employment action................................21

      B.     Plaintiff's retaliation claims also fail ...............................................24

            1.     Plaintiff did not exhaust her claim that she was denied the ability to be compensated for teaching in retaliation for protesting the recusal recommendation .....................................25

            2.     Plaintiff has not stated a prima facie case of retaliation ...........26

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

      *a.*    *Two of the alleged retaliatory actions are not adverse actions for purposes of a retaliation claim*....................27

      *b.*    *Plaintiff has not alleged a causal link between protected activity and the denial of her ability to be compensated for teaching a course at UCLA*................29

CONCLUSION ..........................................................................30

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

# TABLE OF AUTHORITIES

**CASES**

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force,*
  716 F.3d 633 (D.C. Cir. 2013) ...................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..............................................................11, 28

*B.K.B. v. Maui Police Dep't,*
  276 F.3d 1091 (9th Cir. 2002)............................................. 25, 26

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................11

*Bergene v. Salt River Project Agricultural Improvement & Power Dist.,*
  272 F.3d 1136 (9th Cir. 2001) ...................................................22

*Boone v. Goldin,*
  178 F.3d 253 (4th Cir. 1999) ......................................................23

*Brock v. United States,*
  64 F.3d 1421 (9th Cir. 1995) ......................................................15

*Broughton v. Courtney,*
  861 F.2d 639 (11th Cir. 1988) ....................................................16

*Brown v. Gen. Servs. Admin.,*
  425 U.S. 820 (1976)......................................................................12

*Burlington Indus., Inc. v. Ellerth,*
  524 U.S. 742 (1998)......................................................................23

*Burlington N. & Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006)........................................................................27

*Carducci v. Regan,*
  714 F.2d 171 (D.C. Cir. 1983) ....................................................15

*Chuang v. Univ. of Cal. Davis,*
  225 F.3d 1115 (9th Cir. 2000) ....................................................22

*Clark County Sch. Dist. v. Breeden,*
  532 U.S. 268 (2001).....................................................................29

*Collins v. Bender*,
    195 F.3d 1076 (9th Cir. 1999)..................................................13

*Cornwell v. Electra Cent. Credit Union*,
    439 F.3d 1018 (9th Cir. 2006).................................................29

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..............................................................10

*Davis v. Team Elec. Co.*,
    520 F.3d 1080 (9th Cir. 2008).................................................22

*Douglas v. Preston,*,
    559 F.3d 549 (D.C. Cir. 2009) ...............................................23

*EEOC v. Crown Zellerbach Corp.*,
    720 F.2d 1008 (9th Cir. 1983).................................................21

*Elgin v. Dep't of Treasury*,
    132 S. Ct. 2126 (2012)............................................ 12, 13, 14

*Forkkio v. Powell*,
    306 F.3d 1127 (D.C. Cir. 2002)..............................................23

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) .................................................17

*Freeman v. Oakland Unified Sch. Dist.*,
    291 F.3d 632 (9th Cir. 2002)..................................................26

*Greenlaw v. Garrett*,
    59 F.3d 994 (9th Cir. 1995)....................................................18

*Hashimoto v. Dalton*,
    118 F.3d 671 (9th Cir. 1997)..................................................20

*Hellman v. Wesiberg*,
    360 F. App'x 776 (9th Cir. 2009)...........................................28

*Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*,
    521 F. App'x 599 (9th Cir. 2013)................................... 26, 29

*Jones v. NASA*,
    71 F. App'x 634 (9th Cir. 2003)..............................................30

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

*Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*,
  572 F.3d 1039 (9th Cir. 2009)................................................................18

*Lombardi v. Small Bus. Admin.*,
  889 F.2d 959 (10th Cir. 1989)..............................................................17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................10

*Luox v. Maire*,
  337 F. App'x 695 (9th Cir. 2009).................................................. 23, 28

*Mahoney v. Donovan*,
  721 F.3d 633 (D.C. Cir. 2013) .............................................................17

*Mahoney v. U.S. Postal Serv.*,
  884 F.2d 1194 (9th Cir. 1989).............................................................30

*Manatt v. Bank of America*,
  339 F.3d 792 (9th Cir. 2003)...............................................................29

*Mangano v. United States*,
  529 F.3d 1243 (9th Cir. 2008)........................................................4, 13

*McKenzie v. Ill. Dep't of Transp.*,
  92 F.3d 473 (7th Cir. 1996)..................................................................25

*McKinnon v. Twin Rivers Unified Sch. Dist.*,
  2014 WL 5473244 (E.D. Cal. Oct. 28, 2014)......................................23

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014)..................................................................8

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) .............................................................17

*Orsay v. U.S. Dep't of Justice*,
  289 F.3d 1125 (9th Cir. 2002)..............................................................15

*Richards v. Kiernan*,
  461 F.3d 880 (7th Cir. 2006)................................................................14

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009)................................................................10

*Rodriguez v. Pierce Cnty.*,
　　267 F. App'x 556 (9th Cir. 2008)....................................................27

*Roth v. United States*,
　　952 F.2d 611 (1st Cir. 1991) .........................................................16

*Sarullo v. U.S. Postal Serv.*,
　　352 F.3d 789 (3d Cir. 2003) ..........................................................17

*Saul v. United States*,
　　928 F.2d 829 (9th Cir. 1991).................................................... 13, 16

*Schwartz v. Int'l Fed'n of Prof'l and Technical Eng'rs*,
　　306 F. App'x 168 (5th Cir. 2009)....................................................16

*Sillars v. Nevada*,
　　385 F. App'x 669 (9th Cir. 2010)....................................................28

*Sommatino v. U.S.*,
　　255 F.3d 704 (9th Cir. 2001) .........................................................18

*Spring v. Sheboygan Area School Dist.*,
　　865 F.2d 883 (7th Cir. 1989) .........................................................23

*Stegall v. Citadel Broad. Co.*,
　　350 F.3d 1061 (9th Cir. 2004)........................................................29

*Toro v. Napolitano*,
　　2013 WL 4102168 (S.D. Cal. Aug. 13, 2013) ...................................14

*United States v. Fausto*,
　　484 U.S. 439 (1988)............................................................. *passim*

*United States v. Ritchie*,
　　342 F.3d 903 (9th Cir. 2003).........................................................11

*Vasquez v. Cnty. of Los Angeles*,
　　349 F.3d 634 (9th Cir. 2004).............................................. 18, 25, 26

*Villiarimo v. Aloha Island Air, Inc.*,
　　281 F.3d 1054 (9th Cir. 2002)........................................................29

*Vinieratos v. U.S.*,
　　939 F.2d 762 (9th Cir. 1991) .........................................................18

- x -

*Westendorf v. W. Coast Contractors of Nev., Inc.,*
    712 F.3d 417 (9th Cir. 2013) ................................................... 20, 26

*Wilborn v. Napolitano,*
    2013 WL 1222061 (S.D. Cal. Mar. 25, 2013) ................................. 14

*Young v. United States,*
    769 F.3d 1047 (9th Cir. 2014) ...................................................... 10

**STATUTES**

Civil Service Reform Act (CSRA) of 1978,
    Pub. L. No. 95-454, 92 Stat. 1111 .................................................. 2

5 U.S.C. § 1101 *et seq.* ..................................................................... 13

5 U.S.C. § 1214 .................................................................................. 4

5 U.S.C. § 1215(a) ............................................................................. 4

5 U.S.C. § 2301 ................................................................................ 14

5 U.S.C. § 2302 ........................................................................ *passim*

5 U.S.C. § 4302 .................................................................................. 3

5 U.S.C. § 7101 *et seq.* ....................................................................... 3

5 U.S.C. § 7103(a) ......................................................................... 5, 15

5 U.S.C. § 7106 ............................................................................... 3, 8

5 U.S.C. § 7121 ............................................................................... 4, 5

5 U.S.C. § 7122 .................................................................................. 5

5 U.S.C. § 7123 .................................................................................. 5

5 U.S.C. § 7512 .................................................................................. 4

5 U.S.C. § 7513(d) ............................................................................. 4

5 U.S.C. § 7703 .................................................................................. 4

8 U.S.C. § 1101(b)(4) ......................................................................... 5

8 U.S.C. § 1229a .................................................................................................5

42 U.S.C. § 2000e-16(c) ............................................................... 18, 19, 30

42 U.S.C. § 2000e-3(a) ....................................................................................24

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(1) .........................................10

Federal Rule of Civil Procedure 25(d).................................................. ii

Federal Rule of Civil Procedure 12(b)(6) ..........................................10

**REGULATIONS**

5 C.F.R. § 2635.101(b)(14) ..........................................................................6

5 C.F.R. § 2635.106 ..........................................................................................8

5 C.F.R. § 2635.501(a) ....................................................................................7

5 C.F.R. § 2635.502 ................................................................................ 7, 8, 9

5 C.F.R. § 2635.807 ..........................................................................................7

5 C.F.R. § 2638.201 ..........................................................................................7

5 C.F.R. § 2638.301 ..........................................................................................7

5 C.F.R. Part 2635 .............................................................................................6

5 C.F.R. Part 3801 .............................................................................................6

29 C.F.R. § 1614.105 .....................................................................................18

29 C.F.R. § 1614.106 .....................................................................................18

29 C.F.R. § 1614.407(a)-(b) .....................................................................19

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

**OTHER AUTHORITIES**

Ethics & Professionalism Guide for Immigration Judges,
    *available at* http://www.justice.gov/eoir/sibpages/IJConduct/
    EthicsandProfessionalismGuideforIJs.pdf ............................................................6

EOIR, Office of Planning, Analysis, & Technology, FY 2013 Statistics Yearbook
    *available at* http://www.justice.gov/eoir/statspub/fy13syb.pdf ...........................6

Immigration Court Practice Manual,
    *available at* http://www.justice.gov/eoir/vll/OCIJPracManual/
    Practice_Manual_review.pdf ..................................................................................5

U.S. Office of Government Ethics, Financial Conflicts of Interest & Impartiality,
    Current Government Employees, http://oge.gov/Topics/Financial-Conflicts-
    of-Interest-and-Impartiality/Current-Government-Employees ...........................7

Notice of Motion & Motion To Dismiss - No. 2:14-cv-6309-GW-CW

**INTRODUCTION**

Plaintiff Afsaneh Ashley Tabaddor, an Immigration Judge (IJ) in Los Angeles, brings this suit to challenge an employment action taken by her employer, the U.S. Department of Justice's (DOJ's) Executive Office for Immigration Review (EOIR).  Specifically, when plaintiff sought her employer's approval to accept a White House invitation to attend a "Roundtable of Iranian-American Community Leaders" at the White House, the EOIR Office of General Counsel (OGC)—applying government ethics regulations—recommended that, if she chose to attend this prominent event, she should recuse herself from matters involving individuals from Iran, a tiny portion of her docket, to avoid any appearance of partiality.

Plaintiff advances two largely inconsistent theories as to why this recommendation was unlawful.  On the one hand, she contends that the recusal recommendation was based on an allegedly overbroad agency policy pertaining to the recusal of IJs, which plaintiff claims chills not only her own First Amendment-protected speech, but that of her colleagues.  On the other hand, she claims that the recusal recommendation was the result of intentional discrimination targeted specifically against her based on her race, national origin, and/or religion.  She also alleges that the agency took retaliatory actions when she protested the recusal opinion, in violation of Title VII.

For a variety of reasons, all of plaintiff's claims should be dismissed.  First, the Court lacks jurisdiction over plaintiff's constitutional claims because those claims are precluded by the Civil Service Reform Act (CSRA).  Plaintiff's claims,

although couched in constitutional terms, amount to a quintessential challenge to an agency's actions in its role as an employer.  The Supreme Court has held that the remedies established by the CSRA are the *exclusive* means of redressing employment disputes involving federal employees, even when such disputes are styled as constitutional claims.   Here, plaintiff is attempting to improperly circumvent the CSRA process by bringing her constitutional claims directly to this Court.

Second, plaintiff's Title VII discrimination claim should be dismissed for both jurisdictional and non-jurisdictional reasons.  The Court lacks jurisdiction over this claim because plaintiff failed to administratively exhaust it in a timely manner.  But even had the claim been properly exhausted, plaintiff has not alleged facts sufficient to survive a motion to dismiss, because she has failed to allege that she was subject to an adverse employment action, which is an element of a prima facie case of discrimination under Title VII.  Third and finally, plaintiff's claims of retaliation should also be dismissed.  She failed to administratively exhaust one such claim, and does not allege facts from which the Court can infer that she has satisfied her prima facie case as to all of the alleged instances of retaliation. Therefore, the Court should dismiss plaintiff's Amended Complaint in its entirety.

## BACKGROUND

## I.   Statutory and Regulatory Background

### A.   The Civil Service Reform Act

The Civil Service Reform Act (CSRA) of 1978, Pub. L. No. 95-454, 92 Stat. 1111, as amended, codified throughout Title 5 of the U.S. Code, "comprehensively

overhauled the civil service system" and created an "elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (internal quotation marks and alteration omitted). The law "replaced the [previous] patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. The CSRA describes "in great detail the protections and remedies applicable to [adverse personnel] action, including the availability of administrative and judicial review." *Id.* at 443. The CSRA also codifies the rights and obligations of federal bargaining units and labor representatives—including the mutual obligation to bargain over the conditions of employment—and sets out a detailed pathway to administrative and judicial review when disputes about those conditions arise. *See* 5 U.S.C. § 7101 *et seq.* But the exhaustive scheme of the CSRA covers the entire scope of the federal employment relationship, even beyond personnel actions. *See, e.g.*, 5 U.S.C. § 7106(a)(2)(B) (assignment of work); *id.* § 4302 (establishment of performance appraisal systems).[2]

For personnel action, different review procedures govern depending on the nature of the action. *See generally Fausto*, 484 U.S. at 445-47. For example, an "adverse action"—defined as a removal, a suspension for more than 14 days, a

---

[2] Under the CSRA, a "covered position" is "any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service," subject to two exceptions, neither of which applies to IJs. 5 U.S.C. § 2302(a)(2)(B). Thus, IJs are subject to the CSRA.

reduction in grade, a reduction in pay, or a furlough of 30 days or less, *see* 5 U.S.C. § 7512—may be appealed directly to the Merit Systems Protection Board (MSPB), with judicial review of the Board's decision available in the Court of Appeals for the Federal Circuit.  *Id.* §§ 7513(d), 7703(b)(1).  In contrast, an employee must first seek redress for a "prohibited personnel practice"—defined as an agency "personnel action" taken on an impermissible basis, 5 U.S.C. § 2302(a)(1), (b), including a "significant change in duties, responsibilities, or working conditions," *id.* § 2302(a)(2)(A)(xii); *see also Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008) (discussing the CSRA's definition of "prohibited personnel practice and "personnel action")—in the Office of Special Counsel (OSC), unless the action is directly appealable to the MSPB.  *See* 5 U.S.C. § 1214(a)(3).  OSC investigates allegations of prohibited personnel practices and, if it concludes that there are reasonable grounds to believe such a practice occurred, it can seek corrective action from the agency involved and, if necessary, the MSPB.  *See id.* §§ 1214(a), (b), 1215(a).  Again, judicial review of an MSPB decision is available in the Federal Circuit.  *See id.* §§ 1214(c), 7703.

Finally, Chapter 71 of the CSRA provides that any collective bargaining agreement must include grievance procedures that individual employees may utilize.  *See* 5 U.S.C. § 7121.  The statute provides that with a few exceptions, the agreement's specified grievance procedures "shall be the exclusive administrative procedures for resolving grievances which fall within its coverage."  *Id.* § 7121(a)(1).  In general, the statute defines "grievance" broadly as "any complaint" by an employee "concerning any matter relating to employment," or

1  concerning the interpretation or alleged breach of the collective bargaining

2  agreement or "any law, rule, or regulation affecting conditions of employment."

3  *Id.* § 7103(a)(9). The statute also defines "conditions of employment" as almost all

4  "personnel policies, practices, and matters, whether established by rule, regulation,

5  or otherwise, affecting working conditions." *Id.* § 7103(a)(14). The CSRA details

6  limited judicial review rights for matters proceeding through the grievance process.

7  *See id.* §§ 7121-7123.

8  **B.    Immigration Judges**

9  EOIR administers the nation's immigration court system. The office

10  employs approximately 237 IJs in 58 immigration courts nationwide. *See* Office of

11  the Chief Immigration Judge, http://www.justice.gov/eoir/ocijinfo.htm (last visited

12  Jan. 13, 2015). An IJ is "an attorney whom the Attorney General appoints as an

13  administrative judge within the Executive Office for Immigration Review,

14  qualified to conduct specified classes of proceedings," including removal

15  proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1101(b)(4). These administrative

16  immigration proceedings involve determining whether foreign-born individuals

17  whom the Department of Homeland Security (DHS) charges with violating

18  immigration law should be ordered removed from the United States or should be

19  granted relief from removal and be permitted to remain in this country. *See*

20  *generally* Immigration Court Practice Manual at 7-8, *available at*

21  http://www.justice.gov/eoir/vll/OCIJPracManual/Practice_Manual_review.pdf (last

22  visited Jan. 12, 2015) (describing the jurisdiction and authority of IJs). IJs are

23  assigned new cases on a rotating basis. In fiscal year 2013, immigration courts

received 271,279 new immigration matters, including 18,564 received in Los Angeles, where plaintiff sits. *See* EOIR, Office of Planning, Analysis, & Technology, FY 2013 Statistics Yearbook at A2-A3 (April 2014), *available at* http://www.justice.gov/eoir/statspub/fy13syb.pdf (last visited Jan. 13, 2015). This means that, on average, each of the 31 IJs in Los Angeles is assigned to approximately 600 new matters every year.

As employees of DOJ, IJs are subject to the ethics regulations that apply to other Executive Branch employees, *see* 5 C.F.R. Part 2635, supplemental ethics regulations applicable to DOJ employees, *see* 5 C.F.R. Part 3801, and ethics guidelines pertaining specifically to IJs, *see* Ethics & Professionalism Guide for Immigration Judges ("Ethics Guide"), *available at* http://www.justice.gov/eoir/sibpages/IJConduct/EthicsandProfessionalismGuidefor IJs.pdf (last visited Jan. 13, 2015).[3] All of these sources of standards of ethical conduct repeatedly emphasize the importance of avoiding the appearance of bias or partiality. *See, e.g.*, Ethics Guide at 1 (IJs "should observe high standards of ethical conduct, act in a manner that promotes public confidence in their impartiality, and avoid impropriety and the appearance of impartiality in all activities"); *id.* at 2 ("An Immigration Judge shall endeavor to avoid any actions that, in the judgment of a reasonable person with knowledge of the relevant facts, would create the appearance that he or she is violating the law or applicable ethical standards."); 5 C.F.R. § 2635.101(b)(14) ("Employees shall endeavor to avoid any

---

[3] The Ethics and Professionalism Guide for Immigration Judges was developed in 2011 to "preserve and promote integrity and professionalism." *See* Ethics Guide at 1. The Guide is incorporated into Plaintiff's Amended Complaint at ¶¶ 7-8.

actions creating the appearance that they are violating the law or the ethical standards set forth in this part."); *id.* § 2635.501(a) ("This subpart contains two provisions intended to ensure that an employee takes appropriate steps to avoid an appearance of loss of impartiality in the performance of his official duties.").[4]

Certain individuals within EOIR's OGC provide guidance and advice on applicable ethics regulations to IJs and other EOIR employees.  *See id.* §§ 2638.201, 2638.301.  Among other duties, designated OGC attorneys offer guidance on IJ participation in outside activities, including speaking events and other public appearances.  *See, e.g.*, *id.* § 2635.807; Am. Compl. ¶¶ 22-23, 70, ECF No. 7.  A supervisor may order the employee to be recused from matters that would raise questions of impartiality due to the employee's participation in the outside

---

[4] Although it is largely irrelevant at this stage of the proceedings, it is worth noting that the regulatory section that is most relevant to this case is 5 C.F.R. § 2635.502. This section contains both a specific and a general provision. The specific provision applies when "an employee knows that a particular matter involving specific parties is likely to have a direct and predictable effect on the financial interest of a member of his household, or knows that a person with whom he has a covered relationship is or represents a party to such matter." *Id.* § 2635.502(a). Throughout her Amended Complaint, plaintiff refers only to this specific portion of the regulation.  However, the section *also* includes a general provision, which plaintiff entirely ignores, that covers "circumstances other than those specifically described" (i.e. a financial conflict or a covered relationship) that "would raise a question regarding his impartiality."  *Id.* § 2635.502(a)(2); *see also, e.g.*, U.S. Office of Government Ethics, Financial Conflicts of Interest & Impartiality, Current Government Employees, http://oge.gov/Topics/Financial-Conflicts-of-Interest-and-Impartiality/Current-Government-Employees (last visited Jan. 13, 2015) ("Moreover, an employee should not work on any matter if the employee is concerned that circumstances other than those expressly described in the regulation would raise a question regarding the employee's impartiality.").  Whether this section is being applied because of a potential financial conflict, a covered relationship, or other circumstances, the same general test is used to determine whether the employee should not participate in the matter—that is, whether "the circumstances would cause a reasonable person with knowledge of the relevant facts to question his impartiality in the matter."  5 C.F.R. § 2635.502(a).

1  activity.  *See, e.g.*, 5 C.F.R. § 2635.502(a); *id.* § 2635.106; 5 U.S.C. § 7106

2  (general authority of supervisors to assign work).

3  **II.      Plaintiff's Allegations and Procedural Background**

4          According to plaintiff's Amended Complaint, plaintiff is an IJ in Los

5  Angeles and a prominent member of the Iranian-American community.  *See* Am.

6  Compl. ¶¶ 1, 19.[5]  On June 27, 2012, plaintiff was invited by the White House

7  Office of Public Engagement to attend an event entitled "Roundtable with Iranian-

8  American Community Leaders."  *Id.* ¶ 31.  She sought approval from her

9  supervisor (Assistant Chief Immigration Judge (ACIJ) Thomas Y.K. Fong) to take

10  annual leave in order to attend the event in her personal capacity.  *Id.*  When ACIJ

11  Fong expressed some hesitation to approve her request, she put her request in

12  writing, which ACIJ forwarded to OGC.  *Id.*  On July 5, 2012, after a phone call to

13  ask some clarifying questions, OGC sent plaintiff an email recommending that if

14  she chose to attend the White House event, she should recuse herself from all

15  matters involving individuals from Iran in order to avoid any possible appearance

16  of partiality.  *Id.* ¶¶ 32-33.  OGC premised its recommendation on 5 C.F.R.

17  § 2635.502(a).  *See id.* ¶ 33.

18          On August 20, 2012, after attending the White House event, plaintiff asked

19  OGC to clarify and offer further justification for its recusal recommendation.  *Id.*

---

20  [5]  At the motion to dismiss stage, "the court must accept as true all factual
21  allegations in the Complaint and draw all reasonable inferences in favor of the
   nonmoving party."  *Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir. 2014).
22  Therefore, the factual background offered here is based on the allegations in
   plaintiff's Amended Complaint.  If necessary—and it should not be, as all of
23  plaintiff's claims should be dismissed—defendants will refute plaintiff's factual
   allegations at a later stage of the proceedings.

¶ 34.  In response, on August 28, 2012, OGC offered further explanation for its opinion, and reiterated its view that plaintiff should recuse herself from cases involving individuals from Iran, again relying on 5 C.F.R. § 2635.502(a).  *Id.* ¶¶ 35, 37.  Plaintiff again sought clarification on September 5, 2012, and OGC again affirmed its recommendation.  *Id.* ¶¶ 39-40.  OGC also noted that it had conferred with DOJ's Departmental Ethics Office, which agreed with the recusal recommendation.  *Id.* ¶ 40.  On September 10, 2012, plaintiff contacted ACIJ Fong to discuss OGC's opinion.  *Id.* ¶ 41.  Based on OGC's recommendation, ACIJ Fong directed plaintiff to recuse herself from all cases involving individuals from Iran.  *Id.* ¶ 42.  In response, plaintiff recused herself from eight cases.  *Id.* ¶ 43.

Finally, plaintiff alleges that "beginning within days after protesting the recusal recommendation," she was "suddenly denied use of her title (with an appropriate disclaimer) in connection with approvals for outside speaking engagements."  *Id.* ¶ 71.  She also alleges that, at some unidentified time thereafter, she was "suddenly den[ied] her ability to be compensated for teaching courses relating to immigration law at UCLA."  *Id.* ¶ 73.

After contacting an EEO counselor and receiving a notice of final interview, plaintiff filed a formal Equal Employment Opportunity (EEO) complaint with the agency's EEO office on November 29, 2012, alleging claims of discrimination and retaliation under Title VII.  *Id.* ¶ 16.  On May 14, 2014, the DOJ Complaint Adjudication Office (CAO) issued its final decision rejecting all of plaintiff's claims, and notifying her of her right to sue.  *See id.*  Plaintiff filed her initial Complaint on August 12, 2014, and filed an Amended Complaint on October 3,

2014.  In addition to her Title VII claims, plaintiff also asserts claims under the First Amendment, alleging that the recusal recommendation was based on an unconstitutionally overbroad agency policy pertaining to the recusal of IJs.  *See* Am. Compl. ¶¶ 74-85.

## STANDARD OF REVIEW

Defendants move to dismiss all of plaintiff's claims—some for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), some for failure to state a claim under Rule 12(b)(6), and some for both.  Plaintiffs bear the burden of showing subject-matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (internal quotation marks omitted).  Although a court must generally accept factual allegations as true, "allegations of jurisdictional facts . . . are not afforded presumptive truthfulness; on a motion to dismiss for lack of subject matter jurisdiction, the court may hear evidence of those facts and 'resolv[e] factual disputes where necessary.'" *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014) (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)).

As to those claims that should be dismissed under Rule 12(b)(6) for failure to state a claim, in evaluating the sufficiency of a complaint, a court is generally limited to the facts alleged in the complaint; but "[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the

motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).   Although, in the context of a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## **ARGUMENT**

### I.   The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims Because they Are Precluded by the CSRA

In the first two counts of her Amended Complaint, plaintiff challenges her employer's direction to recuse herself from a category of cases in order to avoid the appearance of bias in her duties as an IJ as violative of the First Amendment. She contends that her agency's application of the government ethics regulations was overbroad and chilled her speech and associational rights outside the workplace, as well as those of other IJs.[6]   Although plaintiff couches her claim in constitutional terms, the Supreme Court has held that the remedies established by the CSRA are the *exclusive* means of redressing employment disputes involving federal employees, even when these disputes are styled as constitutional claims.

---

[6] While Plaintiff attempts in the actual counts of her Amended Complaint to characterize her challenge as to the agency's applications of its speech policies in general, she references nothing in her Amended Complaint other than the alleged facts about her own employment dispute over the recusal advice that she received.

1    *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012).  Thus, the CSRA precludes

2    review by this Court and plaintiff's constitutional claims should be dismissed.[7]

3          The comprehensive and preclusive nature of the CSRA has been repeatedly

4    emphasized by the Supreme Court.  As the Court has explained—and as described

5    above—"[t]he CSRA established a comprehensive system for reviewing personnel

6    action taken against federal employees."  *Fausto*, 484 U.S. at 455.  Prior to the

7    enactment of the CSRA, federal employment law consisted of an "outdated

8    patchwork of statutes and rules built up over almost a century."  *Id.* at 444 (internal

9    quotation marks and citation omitted).  Congress responded by enacting in the

10    CSRA "an integrated scheme of administrative and judicial review, designed to

11    balance the legitimate interests of the various categories of federal employees with

12    the needs of sound and efficient administration."  *Id.* at 445.  The CSRA regulates

13    virtually every aspect of federal employment by, among other things: setting merit

14    systems principles to guide federal personnel management; establishing various

15    agencies and entities to administer federal employment matters; describing

16    numerous bases on which personnel actions are prohibited; and specifying the

17    administrative and judicial remedies available to various categories of employees

18
19
20
21
22
23

[7] As previously mentioned, plaintiff's constitutional claims do not appear to sound in discrimination—in other words, in this portion of her Amended Complaint, plaintiff's claims are framed as a challenge to a broadly applicable agency policy pertaining to the recusal of IJs, not as a challenge to an act of discrimination targeted specifically at her.  Again, this places her constitutional claims in significant tension with her discrimination claim.  However, were plaintiff to attempt to argue that her constitutional claims really *are* discrimination claims, such claims would be entirely preempted by Title VII.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976) (holding that Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination").

in response to such prohibited personnel practices and limited types of adverse actions taken for any reason. *See* 5 U.S.C. § 1101 *et seq.* The CSRA accordingly provides a "comprehensive" scheme of protections and remedies for federal employment disputes, *Fausto*, 484 U.S. at 448, and "prescribes in great detail the protections and remedies applicable[,] . . . including the availability of administrative and judicial review," *id.* at 443.

The CSRA's remedies are the exclusive means of obtaining judicial review of claims arising out of federal employment disputes, and are preclusive of district court jurisdiction. *See Fausto*, 484 U.S. at 448-51, 455; *Elgin*, 132 S. Ct. at 2133-34; *Mangano*, 529 F.3d at 1245-46.[8] "In fact, a federal employee's personnel-related complaints are preempted 'even if no remedy [is] available . . . under the CSRA.'" *Mangano*, 529 F.3d at 1246 (quoting *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999)); *see also Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991).

As the Supreme Court recently made clear in *Elgin*, the preclusive effect of the CSRA applies even to alleged constitutional violations arising out of federal employment. *See* 132 S. Ct. at 2133-34 ("Nothing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing

---

[8] The statute permits review in district court only where an employee alleges that a challenged employment action was based on discrimination prohibited by the Civil Rights Act or other specified anti-discrimination laws, *see* 5 U.S.C. § 2302(d), which is why this Court has jurisdiction over plaintiff's Title VII claims. This provision demonstrates that when Congress wished to preserve existing remedial schemes outside the CSRA, it said so explicitly.

that action is unconstitutional.").  In that case, an employee tried to circumvent the CSRA's exclusive scheme, and brought a constitutional challenge to his discharge from federal employment.  *See id.* at 2131-32.  The Supreme Court found that the "CSRA's objective of creating an integrated scheme of review would be seriously undermined if, as petitioners would have it, a covered employee could challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional."  *Id.* at 2135; *see also id.* at 2136 ("[W]e conclude that the better interpretation of the CSRA is that its exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action."); *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) (explaining that "there is no question but that the CSRA provides the exclusive remedy" for even alleged constitutional violations "arising out of federal employment"); *Toro v. Napolitano*, No. 12-cv-2804, 2013 WL 4102168, at *2 (S.D. Cal. Aug. 13, 2013) (dismissing the plaintiff's constitutional claim as precluded by the CSRA); *Wilborn v. Napolitano*, No. 11-cv-2252, 2013 WL 1222061, at *3-*4 (S.D. Cal. Mar. 25, 2013) ("In light of Supreme Court and Ninth Circuit precedent, the CSRA precludes this Court's jurisdiction over Plaintiff's constitutional claims, which seek equitable relief.").

Nor is there any doubt that plaintiff's constitutional claims are employment-related, and thus within the scope of the CSRA.  Chapter 23 of the CSRA establishes merit system principles for personnel management in federal employment, 5 U.S.C. § 2301, and forbids agencies from engaging in "prohibited

personnel practices," *id.* § 2302.  The statute defines such practices as "personnel

actions" made for various prohibited reasons, such as "unlawful discrimination,

coercion of political activity, nepotism, and reprisal against so-called

whistleblowers." *Fausto*, 484 U.S. at 446 (summarizing 5 U.S.C. § 2302(b)).  The

statute defines merit principles to include that employees should be treated "with

proper regard for their . . . constitutional rights."  5 U.S.C. § 2302(b)(2).  The

statute further defines "personnel actions" to include promotions, performance

evaluations, changes in pay, and "any other significant change in duties,

responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii).[9]

"The definition of 'personnel action' is, necessarily, broad." *Mangano*, 529

F.3d at 1247.  As the Ninth Circuit has explained, "[t]here are limits to what

qualifies as a 'personnel action,' but the instances are well outside anything that

could reasonably be described as a 'personnel action.'" *Id.*; *see also Carducci v.

Regan*, 714 F.2d 171, 174 n.3 (D.C. Cir. 1983) ("The types of personnel action

which can constitute grounds for a prohibited personnel practice claim are

extremely broad, if not exhaustive.") (emphasis omitted).[10]  Courts have invoked

_____

[9] Furthermore, as previously mentioned, Chapter 71 of the CSRA governs how unionized employees—such as IJs—may resolve disputes over "conditions of employment," which the statute defines as almost all "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions." 5 U.S.C. § 7103(a)(14). This portion of the CSRA further demonstrates that plaintiff's constitutional claims are precluded. *See, e.g.*, *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633 (D.C. Cir. 2013).

[10] The Ninth Circuit has identified two such instances "well outside" the definition of a "personnel action." *See Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1129 (9th Cir. 2002) (holding that aiming a loaded weapon at an employee does not fall within the CSRA's definitions of personnel action); *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (holding the CSRA does not preempt consideration

the broad definition of "personnel action" in holding that complaints about a wide variety of employment-related disputes fall within the preclusive scope of the CSRA. *See Mangano*, 529 F.3d at 1247 (alleged tortious "interference with the right to practice a lawful profession" was really a claim that plaintiff was "unfairly terminated fall[ing] squarely within the definition of a personnel action as a 'significant change in duties, responsibilities or working conditions'"); *Saul*, 928 F.2d at 834 (concluding that opening an employee's personal mail addressed to the workplace fell within definition of "personnel action").[11]

Here, plaintiff invokes the First Amendment to challenge her employer's recommendation that she recuse herself from certain cases.  The agency's recommendation was issued in the context of an employee's request to take annual leave to attend an outside event, and pertained to the assignment of job responsibilities in light of ethical considerations.  Thus, plaintiff's constitutional claims are a quintessential challenge to an agency's activities in its role as an employer, which is precisely the type of issue that falls within the CSRA's

---

of employee's claims of on-the-job rape and sexual assault by a supervisor).  The facts of these cases are easily distinguishable from the alleged facts underlying plaintiff's constitutional claims in this case.

[11] *See also Roth v. United States*, 952 F.2d 611, 614 (1st Cir. 1991) (concluding that "utterances and associated acts which reflected dissatisfaction with [plaintiff's] work within the FAA and which focused upon substantial conflicts [about] agency policy and procedures" were "personnel action[s]"); *Broughton v. Courtney*, 861 F.2d 639, 643 (11th Cir. 1988) (concluding that "recommending certain applicants for employment positions, assigning work, disciplining employees, and restructuring the workforce" were personnel actions under the CSRA); *Schwartz v. Int'l Fed'n of Prof'l and Technical Eng'rs*, 306 F. App'x 168, 173 (5th Cir. 2009) (moving ALJ to inferior office space is a change in working conditions under the CSRA).

1   preclusive scope.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 795 n.5 (3d Cir.

2   2003) (noting "congressional intent to extend the CSRA to the kind of decisions

3   that are endemic in the daily dynamics of the employee/employer relationship");

4   *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) (CSRA

5   precluded Bivens action where plaintiff's "position as a federal employee is central

6   to his complaints").  As the D.C. Circuit recently held in an analogous case, "[t]he

7   selective assignment of cases affects the number or type of cases an administrative

8   law judge will receive.  That strikes us as a working condition."  *Mahoney v.*

9   *Donovan*, 721 F.3d 633, 636 (D.C. Cir. 2013).[12]

10  **II.  Plaintiff's Title VII Claims Fail**

11            **A.   Plaintiff's Title VII discrimination claim should be dismissed
12                 because it was not timely exhausted and because plaintiff has
                   failed to adequately plead discrimination**

13           As explained below, for at least two reasons, plaintiff's Title VII

14  discrimination claim should also be dismissed.[13]  First, plaintiff did not exhaust

---

15  [12] Nor does it matter that plaintiff's First Amendment claims are framed as broad
16  challenges to agency action affecting all IJs.  Whether an agency's action affects
    one or many employees does not affect whether it is the sort of employment-
17  related action that falls within the CSRA's preclusive scope.  *See Nyunt v.*
    *Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448-49 (D.C. Cir. 2009) (CSRA
18  preclusion principles apply "to a 'systemwide challenge' to an agency policy . . .
    just as it does to the implementation of such a policy in a particular case");
19  *Fornaro v. James*, 416 F.3d 63, 68-69 (D.C. Cir. 2005) (Roberts, J.) ("Allowing
    district court actions challenging how OPM calculates civil service benefits for
20  particular classes of beneficiaries would plainly undermine the whole point of
    channeling review of benefits determinations to the MSPB and from there to the
21  Federal Circuit.").

22  [13] It is again worth noting that plaintiff's discrimination claim is in tension with her
    constitutional claims.  On the one hand, plaintiff contends that the agency's recusal
23  recommendation was motivated by discriminatory animus.  But on the other hand,
    plaintiff alleges that, as a general matter, the agency policy pertaining to the recusal

1    this claim, and thus the Court lacks jurisdiction to consider it.  Second, plaintiff's

2    Amended Complaint does not allege sufficient facts to support a claim of

3    intentional discrimination because her allegations do not amount to an adverse

4    employment action.

> ### 1.  Plaintiff did not exhaust her Title VII discrimination claim because she did not contact an EEO counselor within 45 days

7         "In order to bring a Title VII claim in district court, a plaintiff must first

8    exhaust her administrative remedies."  *Sommatino v. U.S.*, 255 F.3d 704, 707 (9th

9    Cir. 2001); *see also*, 42 U.S.C. § 2000e-16(c); *Vinieratos v. U.S.*, 939 F.2d 762,

10   767-68 (9th Cir. 1991).  Such exhaustion must be "timely," *Vasquez v. Cnty. of Los

11   Angeles*, 349 F.3d 634, 644 (9th Cir. 2004), which includes compliance with all

12   administrative deadlines, *see Kraus v. Presidio Tr. Facilities Div./Residential

13   Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *Greenlaw v. Garrett*, 59 F.3d

14   994, 997 (9th Cir. 1995).

15        As a first step in the exhaustion process, a federal employee must attempt to

16   resolve the matter by filing an informal complaint with the agency's EEO

17   counselor within 45 days of the alleged discriminatory act or personnel action at

18   issue.  *See* 29 C.F.R. § 1614.105 (pre-complaint processing); *Kraus*, 572 F.3d at

19   1043.[14]  In her Amended Complaint, plaintiff claims that she contacted an EEO

20   of IJs is unconstitutionally vague and overbroad, which chills not only plaintiff's
     own protected speech, but that of her colleagues.  *See, e.g.*, Am. Compl. ¶ 11.

21   Thus, plaintiff offers two largely competing explanations for the agency's actions.
     Of course, defendants reject both explanations, but even under plaintiff's theory of

22   this case, it is difficult to see how both could be true.

23   [14] If the matter is not resolved, then the employee must file a formal administrative
     complaint with the agency.  29 C.F.R. § 1614.106 (individual complaints).  An

counselor on October 10, 2012.  Am. Compl. ¶ 16.  But the alleged discriminatory action that plaintiff challenges occurred on July 5, 2012, when OGC first recommended that plaintiff recuse herself from cases involving individuals from Iran.  *Id.* ¶ 33.  Thus, it is apparent from the face of plaintiff's Amended Complaint that she did not initiate contact with an EEO counselor for more than three months, well outside the 45-day period mandated by regulation.

Perhaps in recognition this problem, plaintiff's Amended Complaint is vague about the actual personnel action that gave rise to her claims of discrimination, and she alleges that, on August 28, 2012, OGC "escalat[ed] the . . . opinion from a recommendation to an order."  *Id.* ¶ 35.  If August 28 were indeed the operative date, plaintiff's contact with an EEO counselor would have fallen just inside the 45-day window.  But in fact, aside from her self-serving characterization of the July 5 email as a "recommendation" and the August 28 email as an "order," plaintiff has not alleged any facts drawing a substantive distinction between the initial July 5 recommendation and the subsequent August 28 confirmation of that earlier recommendation.  *See* Am. Compl. ¶¶ 33, 35-38.  The Amended Complaint makes clear that the initial email from OGC contained its recommendation that, based on the relevant ethics regulation as applied to the facts and circumstances of plaintiff's situation, plaintiff should recuse herself from cases involving individuals from Iran.  *See* Am. Compl. ¶ 33.  Later emails only provided confirmation and

employee may file a civil action in federal district court within 90 days of receiving notice of the final agency action on the employee's formal administrative complaint, or 180 days from the filing of the complaint if no final action has been taken by that time.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a)-(b).  These subsequent administrative deadlines are not at issue here.

Mem. in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

more explanation of OGC's reasoning in response to requests from plaintiff—they never deviated from OGC's initial July 5 recommendation.  *See id.* ¶ 35.[15]  Thus, the alleged discriminatory act that plaintiff challenges—OGC's recusal recommendation—occurred on July 5, 2012.  Plaintiff cannot claim that the decision only became discriminatory at some later date.[16]

In fact, plaintiff's own allegations make clear that her challenge is to the OGC opinion issued on July 5, 2012.  In describing her retaliation claim, plaintiff alleges that, after she "protested the recusal/case reassignment recommendation as unlawful," she "was ordered recused and reassigned from all cases involving individuals from Iran in perpetuity."  Am. Compl. ¶ 96.  In other words, according to plaintiff's own Amended Complaint, the alleged escalation of the recusal from an opinion to an order was *retaliatory*.  But in order for that to be the case, there must have been some prior/initial allegedly discriminatory act that triggered the objection and the alleged retaliation.  *See Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (describing how anti-retaliation provisions of Title VII are triggered); *see also, e.g.*, *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712

---

[15]  In describing OGC's August 28 email as an "order," in alleged contrast to the July 5 email, plaintiff makes much of the fact that OGC's later email stated that she "should" recuse herself.  Am. Compl. ¶ 35.  But there is nothing to suggest that the word "should," used in this context, is mandatory rather than advisory—indeed, it is better understood as advisory, particularly in light of OGC's lack of authority to require plaintiff to recuse herself.

[16]  To be sure, plaintiff contends that ACIJ Fong ordered her to recuse herself on September 10, 2012, but it is equally clear—based entirely on the allegations in plaintiff's own Amended Complaint—that ACIJ Fong did so because he believed it was required by OGC's ethics opinion, and not out of any discriminatory animus.  *See* Am. Compl. ¶ 42.

F.3d 417, 422 (9th Cir. 2013) ("An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law."); *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) ("The employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful.").

Here, that prior act can only have been the July 5 opinion. To put it another way, plaintiff's theory is that the August 28, 2012 recusal "order," *see* Am. Compl. ¶ 35, was retaliation for plaintiff's August 20, 2012 opposition, *see id.* ¶ 34, to the OGC's allegedly discriminatory July 5, 2012 opinion, *see id.* ¶ 33. Thus, under plaintiff's own theory, the July 5 email violated Title VII and gave rise to her complaint, and plaintiff had 45 days from July 5 to file an informal complaint with an EEO counselor.[17] Because she failed to meet that deadline, plaintiff did not timely exhaust her Title VII discrimination claim, and this Court lacks jurisdiction over that claim.

> 2.    Plaintiff has not adequately pled a prima facie case of intentional discrimination because her allegations do not amount to an adverse employment action

Because plaintiff failed to exhaust her intentional discrimination claim, the Court need not decide whether she has adequately pled such a claim in her Amended Complaint. Should the Court reach the question, however, plaintiff's

---

[17] If the Court were to determine—contrary to the government's argument and plaintiff's own allegations—that August 28 is the date of the initial discriminatory act that gives rise to plaintiff's complaint, then the August 28 email cannot *also* be retaliatory, and plaintiff's claim of retaliation should be dismissed.

Amended Complaint fails to adequately plead an intentional discrimination claim because she has not sufficiently alleged that she was subject to an adverse employment action, which is an element of a prima facie case of discrimination under Title VII. *See, e.g.*, *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (describing the elements of a prima facie case of a Title VII discrimination claim); *Bergene v. Salt River Project Agricultural Improvement & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001) (same). "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges . . . of employment.'" *Davis*, 520 F.3d at 1089 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)). As explained below, plaintiff has failed to allege that she has suffered *any* material change to the "terms, conditions, or privileges" of her employment, and thus she has not suffered a cognizable adverse employment action.

The alleged discriminatory action at issue in this case is plaintiff's recusal from cases involving individuals from Iran. As plaintiff explains in her Amended Complaint, she recused herself from eight such cases on her docket. *See* Am. Compl. ¶¶ 43-44. In all other respects, her employment remains unchanged. She has not alleged that her overall caseload has changed in any way (except for the fact that it no longer includes cases involving individuals from Iran), or that there were any other changes to her duties or responsibilities. *Cf. Davis*, 520 F.3d at 1089 ("We have held that assigning more, or more burdensome, work responsibilities, is an adverse employment action."). Indeed, she continues to handle a docket of nearly 2,000 cases, of which the cases from which she is

recused represent a tiny fraction.  Nor has plaintiff alleged that her compensation or benefits were reduced or otherwise adversely affected.  *See Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).  At the most, plaintiff has alleged a minor "readjustment of [her] job assignments"—but on its face, this allegation does not rise to the level of an adverse employment action.  *Luox v. Maire*, 337 F. App'x 695, 697 (9th Cir. 2009); *see also Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009) (noting that an adverse action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits").

Plaintiff also claims that she suffered "anguish and humiliation" as a result of the recusal.  Compl. ¶ 45.  But this allegation also does not amount to an adverse employment action.  As the D.C. Circuit explained in *Forkkio*, "[p]urely subjective injuries, such as dissatisfaction with a reassignment, . . . or public humiliation or loss of reputation, . . . are not adverse actions."  306 F.3d at 1130-31 (internal citations omitted); *see also, e.g.*, *Luox*, 337 F. App'x at 697 (citing, with approval, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), for the proposition that "only a 'materially adverse change' constitutes a tangible employment action; a 'bruised ego,' demotion without material changes, and reassignment to a more inconvenient job do not constitute such a change"); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir. 1989); *McKinnon v. Twin Rivers Unified Sch. Dist.*, No. 2:14-cv-450, 2014 WL 5473244, at *2 (E.D. Cal. Oct. 28, 2014) ("Here, plaintiff simply alleges she was assigned the same job duties, but at a different school.  Although plaintiff

1  complains that the transfer subjected her to humiliation and loss of prestige,

2  plaintiff's subjective preference for her prior position is insufficient to state a

3  prima facie case for discrimination predicated on her transfer to another school.").

4  In short, plaintiff's alleged harms are a far cry from the types of tangible injuries

5  that amount to an adverse employment action under Title VII.[18]

6         **B.**    **Plaintiff's retaliation claims also fail**

7        Plaintiff alleges that, after she protested OGC's recusal recommendation, she

8  was retaliated against in violation of Title VII.  *See* 42 U.S.C. § 2000e-3(a).

9  Plaintiff identifies three alleged instances of retaliation.  First, as previously

10 discussed, *see supra* at 20-21, she claims that the recusal recommendation was

11 escalated to an order.  *See* Am. Compl. ¶ 96.  Second, plaintiff alleges that

12 restrictions were placed on her outside speaking activities—specifically, that she

13 was no longer permitted to use her title (with an appropriate disclaimer) when

14 speaking at outside events.  *See id.* ¶ 97.  Third, she claims that she was denied the

15 ability to receive compensation for teaching a course on immigration law at

16 UCLA.  *See id.* ¶ 98.  All three claims of retaliation should be dismissed.  As

17 explained below, plaintiff's third claim was never raised during the administrative

18

19

20 [18] Although plaintiff appears to raise claims of discrimination based on race, national origin, and/or *religion*, *see, e.g.*, Am. Compl. ¶ 87, her Amended

21 Complaint contains absolutely no allegations regarding religious discrimination, and even appears to disavow such a claim at times, *see, e.g.*, *id.* ¶ 60 ("On its face,

22 the recusal order was motivated by Judge Tabaddor's *national heritage and association with Iranian-Americans*." (emphasis added)).  Thus, even if plaintiff's

23 intentional discrimination claim were to survive this motion to dismiss—which it should not—any claim of religious discrimination should be dismissed.

proceedings and thus was not exhausted.  And in any event, she has failed to state a

prima facie case of retaliation with regard to any of her claims.

> 1. Plaintiff did not exhaust her claim that she was denied the ability to be compensated for teaching in retaliation for protesting the recusal recommendation

As previously explained, a plaintiff must timely exhaust her administrative

remedies before bringing a Title VII claim.  *See supra* Section A.1.  In order for a

claim to be properly exhausted, it must have been included in the administrative

charge or be "like or reasonably related to the allegations contained" in the charge.

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  As the Ninth

Circuit has explained:

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.

*Id.*  The purpose of this requirement is to ensure that the agency has an opportunity

to investigate and, if necessary, redress the plaintiff's allegations.  *See id.*; *Vasquez*,

349 F.3d at 644; *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481-82 (7th Cir.

1996) (explaining the reasoning behind the "reasonably related" requirement).

Plaintiff claims that, in retaliation for protesting her recusal, she was denied

the ability to receive compensation for teaching a course on immigration law at

UCLA.  But no such allegation was included in her EEO charge, nor does the

Amended Complaint specifically allege that she exhausted this claim.  Nor can it

be said to be reasonably related to any of the allegations in her charge, such that

the agency could have been expected to investigate the claim. *See B.K.B.*, 276 F.3d at 1100. Plaintiff does not allege that the ethics opinion regarding compensation for teaching at UCLA was related "to the facts that form the basis of the discrimination in the charge" and "occur[ed] within the time frame of the events alleged in the [EEO] charge." *Vasquez*, 349 F.3d at 645. In fact, the relevant ethics opinion was issued almost a year after the events that gave rise to this case, and were not connected to such event in any apparent way. As such, "[a] reasonable investigation by the [agency] would not have encompassed these allegedly retaliatory acts." *Id.*; *see also Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002).

### 2.     Plaintiff has not stated a prima facie case of retaliation

In order to make out a prima facie case of retaliation, a plaintiff must "show that she engaged in protected activity, that she suffered a materially adverse action, and that there was a causal relationship between the two." *Westendorf*, 712 F.3d at 422. As explained above, plaintiff alleges that defendants engaged in three different forms of retaliation, but she has failed to adequately allege retaliation as to all three claims. *See Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601-02 (9th Cir. 2013) (upholding dismissal of retaliation claims for failure to plead sufficient facts to establish a prima facie case). First, two of her claims—that the recusal recommendation was escalated to an "order" and that she was not permitted to use her title when speaking at outside events—do not give rise to a cognizable claim of retaliation because they do not amount to adverse actions. And second, with respect to the ethics opinion recommending that

she not be compensated for teaching, plaintiff has failed to allege facts from which the Court could conclude that the ethics opinion was issued because plaintiff engaged in protected activity.

> ### a. Two of the alleged retaliatory actions are not adverse actions for purposes of a retaliation claim

In order for a plaintiff to show that an allegedly retaliatory action was "adverse," she "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).[19]   The converse is that "those petty slights or minor annoyances that often take place at work and that all employees experience" do not rise to the level of an adverse action. *Id.*

As previously explained, plaintiff's contention that OGC escalated their recusal opinion to an "order" is not plausible as a matter of law because OGC cannot issue a recusal order. As the Amended Complaint itself seems to recognize, OGC provides advice. *See* Am. Compl. ¶¶ 22-23, 70.   On this ground alone, plaintiff has failed to state a claim of retaliation.   But even if it were true that OGC somehow escalated their recusal opinion to an order, this action caused plaintiff no "injury or harm," *Burlington*, 548 U.S. at 67, and thus was not an adverse action sufficient to support a claim of retaliation.   Plaintiff recused herself from eight

---

[19] It should be noted that the standard for an "adverse action" in the context of a retaliation claim is different from the standard for an "adverse employment action" in the context of a Title VII discrimination claim. *See supra* at 22; *see also, e.g.*, *Rodriguez v. Pierce Cnty.*, 267 F. App'x 556, 557 (9th Cir. 2008).

1   cases, which represents a tiny fraction of her docket.  Such a minor readjustment of

2   duties does not rise to the level of an adverse action.  *Cf., e.g.*, *Luox*, 337 F. App'x

3   at 697 (holding that two reprimands and new work performance standards did not

4   amount to an adverse action); *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir.

5   2010) (holding that lateral transfer did not amount to an adverse action because the

6   plaintiff "presented no evidence that the position to which she was moved differed

7   in any material way from the position she occupied prior to her complaints, either

8   with respect to her responsibilities or the conditions under which she performed

9   them"); *Hellman v. Wesiberg*, 360 F. App'x 776, 778-79 (9th Cir. 2009).

10          Similarly, plaintiff's allegation that she was prevented from using her title

11   (with an appropriate disclaimer) when attending outside speaking engagements,

12   *see* Am. Compl. ¶¶ 71-72, 97, does not rise to the level of an adverse action.  Even

13   assuming that her allegations are true—as the Court must at this stage of the

14   proceedings—she alleges no facts to suggest that she was harmed by this ethics

15   restriction—nor is it apparent why such a restriction, which would still have

16   allowed her to attend private events in her personal capacity, would have caused

17   her any harm.  Instead, plaintiff simply alleges that the restriction "would dissuade

18   a reasonable worker from making or supporting a charge of discrimination."  *Id.*

19   ¶¶ 72, 97.  Such a rote recitation of the legal standard is not sufficient to survive a

20   motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

21

22

23

Mem. in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

> **b.** *Plaintiff has not alleged a causal link between protected activity and the denial of her ability to be compensated for teaching a course at UCLA*

Finally, plaintiff has not alleged sufficient facts to support her claim that the ethics opinion recommending that she not receive compensation for teaching an immigration course at UCLA was causally linked to her protected activity. Indeed, the only fact that she alleges to suggest a causal link is that the ethics opinion regarding teaching came after she filed her EEO complaint of discrimination. *See* Am. Compl. ¶¶ 73, 98. Where adverse action follows closely on the heels of protected activity, timing alone "can provide strong evidence of retaliation." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2004). "But timing alone will not show causation in all cases"—temporal proximity is only sufficient to support a claim of retaliation where the allegedly retaliatory action "occurred fairly soon after the employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (finding no causation where there was an 18-month gap between the protected activity and the alleged adverse action, but citing with approval cases with a gap as small as four months); *see also, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases that suggest that a gap of three to four months is insufficiently proximate to infer causation); *Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003) (nine-month gap); *Heyer*, 521 F. App'x at 601 (same); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (seven-month gap).

Here, plaintiff does not say how soon after the events that gave rise to this case she was allegedly denied the ability to be compensated for teaching an

1  immigration course.  This silence alone undermines her claim, and stands in stark

2  contrast to her allegations regarding the restrictions on her use of her title in

3  connection with outside speaking engagements, *see* Am. Compl. ¶ 97 (alleging that

4  the restrictions occurred "within days after protesting the recusal

5  recommendation").  In fact, the alleged retaliatory action took place nearly a year

6  after plaintiff protested her recusal, and thus causation cannot be inferred from

7  mere temporal proximity.

## CONCLUSION

9      For the reasons stated herein, the Court should dismiss all of plaintiff's

10  claims.[20]

_____

[20] Defendants believe that all of plaintiff's claims should be dismissed, but if the Court disagrees and does not dismiss some or all of plaintiff's discrimination claims, then all of the defendants except for Attorney General Holder, in his official capacity, should be dismissed from the case.  In an employment discrimination suit brought against the government, the head of the relevant agency is the only proper defendant. *See* 42 U.S.C. § 2000e-16(c); *see also, e.g.*, *Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 (9th Cir. 1989); *Jones v. NASA*, 71 F. App'x 634, 635 n.1 (9th Cir. 2003).

Date: January 13, 2015          Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

SUSAN RUDY
Assistant Branch Director,
Federal Programs Branch

*/s/ Benjamin L. Berwick*
BENJAMIN L. BERWICK
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8573
Fax: (202) 616-8470
Benjamin.L.Berwick@usdoj.gov

*Attorneys for Defendants*

31