BENJAMIN C. MIZER
  Acting Assistant Attorney General
SUSAN K. RUDY
  Assistant Branch Director
  Federal Programs Branch
BENJAMIN L. BERWICK
  Trial Attorney
  United States Department of Justice
  Civil Division, Federal Programs Branch
  20 Massachusetts Ave., NW
  Washington, DC 20530
  Tel: (202) 305-8573
  Fax: (202) 616-8470
  Benjamin.L.Berwick@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AFSANEH ASHLEY TABADDOR<br><br>Plaintiff,<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States; JEAN KING, in her official capacity as General Counsel, Executive Office for Immigration Review (EOIR); THOMAS Y.K. FONG, in his official capacity as Assistant Chief Immigration Judge, EOIR; MARLENE M. WAHOWIAK, in her official capacity as Associate General Counsel, EOIR; U.S. DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; OFFICE OF THE GENERAL COUNSEL; | Case No. 2:14-cv-6309-GW-CW<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing on Motion<br>Date:    April 23, 2015<br>Time:    8:30 a.m.<br>Place:    312 North Spring Street, Los Angeles, CA 90012, Courtroom 10<br><br>Honorable George H. Wu |

OFFICE OF THE CHIEF
IMMIGRATION JUDGE,[1]

       Defendants.

---

[1] Jeffrey Rosenblum, named as a defendant by plaintiff in his official capacity as the General Counsel of the Executive Office of Immigration Review, no longer serves in that capacity. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as a party with the current Acting General Counsel, Jean King. In any event, neither Mr. Rosenblum nor Ms. King is a proper defendant for an employment discrimination claim. *See infra* note 22.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES.................................................................................v

INTRODUCTION.............................................................................................1

ARGUMENT ....................................................................................................2

I.  The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims Because They Are Precluded by the CSRA.................................................................2

    A.  Because plaintiff's constitutional claims arise out of her federal employment, they are precluded.................................................................3

        1.  The CSRA precludes all claims arising out of federal employment disputes ................................................................3

        2.  Plaintiff's constitutional claims arise out of her federal employment, and are therefore precluded ..............................8

    B.  Plaintiff was required to exhaust her constitutional claims through one of the processes provided by the CSRA.................................. 11

        1.  Whether defendants acted within their authority is a question To be resolved by the CSRA's exclusive remedial scheme, not a basis for evading that scheme ................................. 12

        2.  Section 7121 of the CSRA does not excuse plaintiff from exhausting her constitutional claims .................................. 16

    C.  Claims arising under the Ethics in Government Act are not exempt from the CSRA's preclusive effects ................................................ 17

II.  Plaintiff's Title VII Claims Should Be Dismissed ........................................ 19

    A.  Plaintiff's Title VII discrimination claim should be dismissed because it was not timely exhausted and because plaintiff has failed to adequately plead discrimination .................................................. 19

        1.  Plaintiff did not contact an EEO counselor within 45 days............. 19

2.    Plaintiff has not adequately pled that she was subject to an adverse employment action.................................................. 21

B.    Plaintiff's retaliation claims also fail .............................................. 23

1.    Plaintiff's claim that she was denied the ability to be compensated for teaching was not sufficiently related to the claims in her administrative charge, and thus was not exhausted ......................... 23

2.    Plaintiff has not adequately alleged retaliation.................................... 24

a.    *Two of the alleged retaliatory actions are not adverse actions for purposes of a retaliation claim* ......................................... 24

b.    *Plaintiff has not alleged a causal link between protected activity and the denial of her ability to be compensated for teaching a course at UCLA* ...................................................... 25

CONCLUSION.................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Acting Special Counsel v. Sullivan,*
    6 M.S.P.R. 526 (June 8, 1981) ................................................................ 13, 15

*Am. Bird Conservancy v. FCC,*
    545 F.3d 1190 (9th Cir. 2008) ................................................................ 11, 18

*Am. Fed'n of Gov't Emps. Local 1 v. Stone,*
    502 F.3d 1027 (9th Cir. 2007) ...................................................................... 7

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
    2014 WL 7356566 (D.D.C. Dec. 24, 2014) ............................................... 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 2

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983) .................................................................................... 24

*B.K.B. v. Maui Police Dep't,*
    276 F.3d 1091 (9th Cir. 2002) ............................................................... 23, 24

*Baldazo v. Elko Cnty.,*
    2013 WL 5201091 (D. Nev. Sept. 13, 2013) ............................................... 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................... 2

*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................................................... 18

*Broadway v. Block,*
    694 F.2d 979 (5th Cir. 1982) ........................................................................ 6

*Brown v. Gen. Servs. Admin.,*
    425 U.S. 820 (1976) .................................................................................... 17

*Cambron v. Starwood Vacation Ownership, Inc.,*
    945 F. Supp. 2d 1133 (D. Haw. 2013) ......................................................... 2

*Chardon v. Fernandez,*
    454 U.S. 6 (1981) ................................................................... 21

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001) ............................................................... 25

*Coleman v. Napolitano,*
    2014 WL 4185190 (D.D.C. Aug. 25, 2014)..............................7

*Collins v. Bender,*
    195 F.3d 1076 (9th Cir. 1999) .................................................5

*Conley v. Stockman Bank,*
    2014 WL 5147721 (D. Mont. Oct. 14, 2014) .......................... 24

*Cornwell v. Electra Cent. Credit Union,*
    439 F.3d 1018 (9th Cir. 2006) .............................................. 25

*Del. State Coll. v. Ricks,*
    449 U.S. 250 (1980) ............................................................... 21

*Deweese v. Cascade Gen. Shipyard,*
    2011 WL 3298421 (D. Or. May 9, 2011) .............................. 22

*Douglas v. Donovan,*
    559 F.3d 549 (D.C. Cir. 2009) .............................................. 21

*EC Term of Years Trust v. United States,*
    550 U.S. 429 (2007) ............................................................... 19

*Elec. Workers v. Robbins & Myers, Inc.,*
    429 U.S. 229 (1976) ............................................................... 21

*Elgin v. Dep't of Treasury,*
    132 S. Ct. 2126 (2012)....................................................*passim*

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC,*
    753 F.3d 862 (9th Cir. 2014) .......................................... 20, 21

*Filebark v. U.S. Dep't of Transp.,*
    555 F.3d 1009 (D.C. Cir. 2009) ..............................................4

*Firenze v. NLRB*,
  2013 WL 639151 (D. Mass. Jan. 10, 2013) ........................................................ 10

*Forkkio v. Powell*,
  306 F.3d 1127 (D.C. Cir. 2002) ........................................................................... 22

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) .................................................................................5

*Freeman v. Oakland Unified Sch. Dist.*,
  291 F.3d 632 (9th Cir. 2002) ............................................................................... 24

*Graham v. Ashcroft*,
  358 F.3d 931 (D.C. Cir. 2004) ...............................................................................4

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
  560 F.3d 495 (D.C. Cir. 2009) ...............................................................................5

*Hall v. Clinton*,
  235 F.3d 202 (4th Cir. 2000) ............................................................................... 16

*Hardy v. Hamburg*,
  2014 WL 5420037 (D.D.C. Sept. 23, 2014) .......................................... 7, 9, 10, 11

*Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*,
  521 F. App'x 599 (9th Cir. 2013) ..................................................................... 2, 25

*Hinck v. United States*,
  550 U.S. 501 (2007) ............................................................................................. 19

*Irizarry v. United States*,
  427 F.3d 76 (1st Cir. 2005) ............................................................................ 12, 13

*Kaplan v. Conyers*,
  733 F.3d 1148 (Fed. Cir. 2013) ........................................................................... 15

*Karamanos v. Egger*,
  882 F.2d 447 (9th Cir. 1989) ............................................................................... 12

*Keeffe v. Library of Cong.*,
  588 F. Supp. 778 (D.D.C. 1984) ............................................................................8

*Kloeckner v. Solis,*
    133 S. Ct. 596 (2012) ................................................................................. 17

*Knox v. Davis,*
    260 F.3d 1009 (9th Cir. 2001) ........................................................... 20, 21

*Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch,*
    572 F.3d 1039 (9th Cir. 2009) ...................................................................2

*Lacayo v. Donahoe,*
    2015 WL 993448 (N.D. Cal. Mar. 4, 2015) ...........................................2

*Levitt v. Yelp!, Inc.,*
    765 F.3d 1123 (9th Cir. 2014) ...................................................................2

*Lombardi v. Small Bus. Admin.,*
    889 F.2d 959 (10th Cir. 1989) ...................................................................5

*Luox v. Maire,*
    337 F. App'x 695 (9th Cir. 2009) .......................................................... 21

*Lyons v. England,*
    307 F.3d 1092 (9th Cir. 2002) ................................................................ 21

*Macy v. Dalton,*
    853 F. Supp. 350 (E.D. Cal. 1994) ....................................................... 17

*Mahtesian v. Lee,*
    406 F.3d 1131 (9th Cir. 2005) ................................................................ 15

*Manatt v. Bank of America,*
    339 F.3d 792 (9th Cir. 2003) .................................................................. 25

*Mangano v. United States,*
    529 F.3d 1243 (9th Cir. 2008) ............................................................ 3, 5

*Mashiri v. Dep't of Educ.,*
    724 F.3d 1028 (9th Cir. 2013) ................................................................ 19

*McKenzie v. Ill. Dep't of Transp.,*
    92 F.3d 473 (7th Cir. 1996) .................................................................... 23

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

*McKinnon v. Twin Rivers Unified Sch. Dist.,*
    2014 WL 5473244 (E.D. Cal. Oct. 28, 2014) ................................................... 22

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) .................................................................................... 20, 21

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) ............................................................................ 5

*Orsay v. U.S. Dep't of Justice,*
    289 F.3d 1125 (9th Cir. 2002) ............................................................................. 6

*Oubichon v. N. Am. Rockwell Corp.,*
    482 F.2d 569 (9th Cir. 1973) ............................................................................ 23

*Paige v. Cisneros,*
    91 F.3d 40 (7th Cir. 1996) .................................................................................. 6

*Pouncil v. Tilton,*
    704 F.3d 568 (9th Cir. 2012) .......................................................................... 20, 21

*Richards v. Kiernan,*
    461 F.3d 880 (7th Cir. 2006) .............................................................................. 6

*Santos-Reyes v. Gonzales,*
    2007 WL 988182 (N.D. Cal. Apr. 2, 2007) ..................................................... 17

*Sarullo v. U.S. Postal Serv.,*
    352 F.3d 789 (3d Cir. 2003) ............................................................................... 5

*Saul v. United States,*
    928 F.2d 829 (9th Cir. 1991) ....................................................................*passim*

*Sculimbrene v. Reno,*
    158 F. Supp. 2d 1 (D.D.C. 2001) ..................................................................... 12

*Sloan v. West,*
    140 F.3d 1255 (9th Cir. 1998) .......................................................................... 17

*Special Counsel v. Eidmann,*
    49 M.S.P.R. 614 (Aug. 16, 1991) ................................................................ 13, 15

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

*Special Counsel v. Harvey,*
   28 M.S.P.R. 595 (Dec. 6, 1984) ............................................................. 13, 15

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home,*
   918 F.2d 963 (D.C. Cir. 1990) .........................................................10, 11, 12

*Stegall v. Citadel Broad. Co.,*
   350 F.3d 1061 (9th Cir. 2004) ..................................................................... 25

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) ......................................................................................2

*Toro v. Napolitano,*
   2013 WL 4102158 (S.D. Cal. Aug. 13, 2013) .......................................... 6, 7

*Towers v. Horner,*
   791 F.2d 1244 (5th Cir. 1986) ......................................................................4

*U.S. Dep't of Justice Exec. Office of Immigration Review & Nat'l Ass'n of Immigration Judges ("EOIR"),* 56 F.L.R.A. 616 (Sept. 1, 2000) ........................................ 14

*United States v. Fausto,*
   484 U.S. 439 (1988) ......................................................................................5

*United States v. Odeh,*
   No. 13-cr-20772 (E.D. Mich. Oct. 22, 2013) ............................................. 15

*Vasquez v. Cnty. of Los Angeles,*
   349 F.3d 634 (9th Cir. 2003) ................................................................. 23, 24

*Veit v. Heckler,*
   746 F.2d 508 (9th Cir. 1984) ................................................................... 4, 5

*Villiarimo v. Aloha Island Air, Inc.,*
   281 F.3d 1054 (9th Cir. 2002) ..................................................................... 25

*Vinieratos v. U.S. Dep't of Air Force,*
   939 F.2d 762 (9th Cir. 1991) ....................................................................... 16

*Weaver v. U.S. Info. Agency,*
   87 F.3d 1429 (D.C. Cir. 1996) ..............................................................*passim*

*Wilborn v. Napolitano,*
   2013 WL 1222061 (S.D. Cal. Mar. 25, 2013) ................................................. 6, 7

**STATUTES**

5 U.S.C. § 1214(c)(1) .....................................................................................7

5 U.S.C. § 2302 ..............................................................................3, 12, 15, 16

5 U.S.C. § 7103(a)(9)(A) ............................................................................. 3, 12

5 U.S.C. § 7106(a)(2)(B) .................................................................................. 14

5 U.S.C. § 7121(d) ........................................................................................... 16

5 U.S.C. app. § 404 ......................................................................................... 18

28 U.S.C. § 455 ............................................................................................... 15

Pub. L. No. 95-454, 92 Stat. 1111 .....................................................................3

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(1) ....................................................................................................2

Rule 12(b)(6) ....................................................................................................2

Rule 25(d) ........................................................................................................ii

**REGULATIONS**

5 C.F.R. § 2635.102(h) .................................................................................... 14

5 C.F.R. § 2635.106 ......................................................................................... 15

5 C.F.R. § 2635.502(a) ......................................................................................9

8 C.F.R. § 1003.10(a) ...................................................................................... 14

- xi -

8 C.F.R. § 1003.9 ...................................................................................... 14

8 C.F.R. § 1240.1(b) .................................................................................. 15

**LEGISLATIVE MATERIAL**

H.R. Rep. No. 95-1756 (1978) (Conf. Rep.), 1978 WL 8586 ............................... 18

# **INTRODUCTION**

In her brief in opposition to defendants' motion to dismiss, plaintiff accuses defendants of "relying upon strained technical arguments" and "seek[ing] to avoid having to answer the substance of the issues or address the grave policy concerns that are raised by their conduct." Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 1, ECF No. 39. But it is plaintiff who spends nearly half of her brief focused on the merits of this case, which are largely irrelevant at this stage of the proceedings. Likewise, the briefs filed by the amici focus almost exclusively on the merits. If necessary, at the appropriate time, defendants will explain why plaintiff's claims fail on their merits. But at this stage, plaintiff and the amici focus on the merits in an attempt to divert the Court's attention from the issues raised by defendants in their motion, which—far from being "strained technical arguments"—go to the inadequacy of plaintiff's Amended Complaint and to the heart of the Court's jurisdiction to hear this case.

When plaintiff does get around to addressing these questions, her arguments are unconvincing. Plaintiff's constitutional claims are inextricably intertwined with her recusal from cases involving Iranian nationals, and thus her claims—no matter how artfully they are framed—arise out of her federal employment and are precluded by the Civil Service Reform Act (CSRA). The Supreme Court has held that the remedies established by the CSRA are the exclusive means of redressing employment disputes involving federal employees, even when such disputes are styled as constitutional claims. At the very least, plaintiff was required to exhaust her constitutional claims through the administrative mechanisms provided by the CSRA, at least two of which were available for her to pursue.

Plaintiff's Title VII claims should also be dismissed. Plaintiff failed to timely exhaust her discrimination claim. Her argument to the contrary rests on her characterization of the initial recusal determination and the subsequent reiteration of that determination as "discrete" acts of discrimination. But every action taken by defendants

1  was the inevitable consequence of the initial recommendation that plaintiff should recuse

2  herself from certain cases if she chose to attend an event at the White House. Because

3  plaintiff, by her own admission, failed to consult with an EEO counselor within 45 days

4  of this determination, she did not timely exhaust her claim. Nor does plaintiff effectively

5  refute defendants' argument that she was not subject to an adverse employment action.

6  Indeed, she does not even attempt to distinguish the cases cited by defendants in their

7  initial brief, which show that the type of intangible harm allegedly suffered by plaintiff

8  does not rise to the level of an adverse employment action for the purposes of a Title

9  VII discrimination claim. Finally, plaintiff's retaliation claims should be dismissed for

10  two reasons—she failed to exhaust at least one such claim, and she has not adequately

11  alleged facts that could plausibly give rise to a retaliation claim.[2]

12  ## ARGUMENT

13  **I.   The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims Because They Are Precluded by the CSRA**

15  Defendants respectfully refer the Court to the description in their initial brief of

16  the comprehensive and preclusive scheme established by the Civil Service Reform Act

---

[2] In discussing the standard of review, which defendants addressed in their initial brief, *see* Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mem.") at 10-11, ECF No. 33, plaintiff states that, "in the discrimination context, a plaintiff need not even plead a *prima facie* case in order to survive a motion to dismiss." Pl.'s Opp'n at 5 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). This argument is of little help to plaintiff. As the Ninth Circuit has made clear in reconciling *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), with earlier Supreme Court rulings espousing a "more lenient pleading standard," plaintiff must allege facts that suggest that she is entitled to relief—for example, that she was subject to an adverse employment action, and that her retaliation claims were causally linked to protected activity. *Levitt v. Yelp!, Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014); *see also, e.g.*, *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599 (9th Cir. 2013); *Cambron v. Starwood Vacation Ownership, Inc.*, 945 F. Supp. 2d 1133, 1143 (D. Haw. 2013); *Lacayo v. Donahoe*, 2015 WL 993448, at *14 (N.D. Cal. Mar. 4, 2015); *Baldazo v. Elko Cnty.*, 2013 WL 5201091, at *6 (D. Nev. Sept. 13, 2013). Plaintiff has failed to do so.

Plaintiff also points out that where defendants have moved to dismiss a claim because of a failure to administratively exhaust, analysis under Rule 12(b)(6), rather than Rule 12(b)(1), is proper. *See* Pl.'s Opp'n at 6. However, defendants' point remains unchanged—plaintiff's failure to administratively exhaust her Title VII discrimination claim and one of her retaliation claims is apparent on the face of the Amended Complaint, and thus those claims should be dismissed. *See Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009).

(CSRA) of 1978, Pub. L. No. 95-454, 92 Stat. 1111, as amended, codified throughout Title 5 of the U.S. Code. *See* Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mem.") at 2-5, ECF No. 33. There, defendants explained that the CSRA provides at least two avenues through which plaintiff could have attempted to raise her claims. First, plaintiff could have sought redress for a "prohibited personnel practice"—defined as an agency "personnel action" taken for an impermissible reason, 5 U.S.C. § 2302(a)(1), (b), including a "significant change in duties, responsibilities, or working conditions," *id.* § 2302(a)(2)(A)(xii); *see also Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008). Alternatively, plaintiff could have pursued a grievance "concerning any matter relating to [her] employment" pursuant to the collective bargaining agreement between the agency and IJs. *See* 5 U.S.C. § 7103(a)(9)(A), *see also id.* §§ 7121-7123. Despite the availability of these administrative review procedures and the comprehensive scope of the CSRA, plaintiff contends that, for several reasons, her constitutional claims fall outside of the statute's ambit. But plaintiff's attempts to circumvent the CSRA are unavailing.

## A. Because plaintiff's constitutional claims arise out of her federal employment, they are precluded

Contrary to plaintiff's arguments, the CSRA's preclusive effect does not depend on whether a particular federal employee may obtain a particular type of relief based on complaints about a particular type of agency action. Where an employee seeks review of an employment-related action, she must do so through the processes available under the CSRA, if any, or not at all. Here, plaintiff's constitutional claims are inextricably intertwined with her federal employment, and thus are precluded by the CSRA.

### 1. The CSRA precludes all claims arising out of federal employment disputes

Plaintiff mistakenly believes that, under the CSRA, this Court lacks jurisdiction only for the subset of disputes that are subject to review by the Merit Systems Protection Board (MSPB) and ultimately the Federal Circuit. *See* Pl.'s Opp'n at 23-24. "[T]he

1   exhaustive remedial scheme of the CSRA," however, would be "impermissibly

2   frustrated" if CSRA exclusivity did not cover "lesser personnel actions," and only

3   applied to those actions subject to the MSPB and judicial review. *Towers v. Horner*, 791

4   F.2d 1244, 1246 (5th Cir. 1986) (internal quotation omitted), *see also Filebark v. U.S. Dep't*

5   *of Transp.*, 555 F.3d 1009, 1013-14 (D.C. Cir. 2009); *Graham v. Ashcroft*, 358 F.3d 931,

6   934-35 (D.C. Cir. 2004) (Roberts, J.). Indeed, it would turn the comprehensive and

7   exclusive nature of the CSRA on its head if lesser personnel actions could be litigated

8   freely and evade the CSRA's administrative and judicial review procedures, while only

9   the subset of more serious personnel actions triggered the CSRA's preclusive effect. *Cf.*

10  *Saul v. United States*, 928 F.2d 829, 839 (9th Cir. 1991) ("It would also undermine this

11  structure to require employees to redress pay-related claims through the CSRA's

12  administrative procedures, while permitting their coworkers with nonpay-related claims

13  to bypass the act's administrative procedures, sue in any federal district court.").

14      What plaintiff fails to understand is that the CSRA provides a comprehensive and

15  *exclusive* scheme for obtaining administrative and judicial review of federal personnel

16  decisions. Put simply, if a claim arises out of a federal employment dispute, it is

17  precluded by the CSRA. This principle has been reaffirmed repeatedly by the Supreme

18  Court, the Ninth Circuit, and other courts. "Given the painstaking detail with which the

19  CSRA sets out the method for covered employees to obtain review of adverse

20  employment actions, it is fairly discernible that Congress intended to deny such

21  employees an additional avenue of review in district court." *Elgin v. Dep't of Treasury*, 132

22  S. Ct. 2126, 2134 (2012). "[T]he comprehensive nature of the procedures and remedies

23  provided by the CSRA indicates a clear congressional intent to permit federal court

24  review as provided in the CSRA or not at all." *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir.

25  1984); *see also Saul*, 928 F.2d at 840 (holding that, in light of "[t]he CSRA's

26  comprehensive remedial provisions . . . there was no inadvertence by Congress" in

27

28

precluding a *Bivens* claim even where "the act prescribes no alternative remedy")[3]; *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) ("A series of opinions from the Supreme Court and [the D.C. Circuit] make clear that [the CSRA's] remedial provisions are exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their sources outside the CSRA.")*; Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 795 n.5 (3d Cir. 2003) (noting "congressional intent to extend the CSRA to the kind of decisions that are endemic in the daily dynamics of the employee/employer relationship"); *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) (CSRA precluded *Bivens* action where plaintiff's "position as a federal employee is central to his complaints"). Thus, the CSRA "constitutes *the* remedial regime for federal employment and personnel complaints." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009). "[W]hat you get under the CSRA is what you get." *Grosdidier v. Chairman*, *Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) (quotation omitted).

The CSRA might very well provide plaintiff with administrative and judicial review in this case—at the very least, plaintiff was required to exhaust her claims through the avenues made available to her by the CSRA, *see infra* Section B. But even if the CSRA does not provide *any* right to administrative or judicial review of a particular federal employment matter—as is the case for minor personnel disputes and certain categories of employees—that means that review is precluded *entirely*, not that the aggrieved employee may circumvent the CSRA and bring her claims directly to district court. *See United States v. Fausto*, 484 U.S. 439, 443-44 (1988) (holding that the CSRA precluded jurisdiction even though the particular action at issue could not give rise to either administrative or judicial review). "In fact, a federal employee's personnel-related complaints are preempted 'even if no remedy [is] available . . . under the CSRA.'" *Mangano*, 529 F.3d at 1246 (quoting *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999));

---

[3] The panel in *Saul* described the relevant holding of *Veit* as dictum, but then proceeded to reach the same conclusion. *See Saul*, 928 F.2d at 840.

*see also Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128-29 (9th Cir. 2002) ("[T]he CSRA preempts federal claims that fall within its scope even when the statute provides no alternative remedy."); *Saul*, 928 F.2d at 840 ("[T]he preclusive effect of the CSRA sweeps beyond the contours of its remedies."); *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996). The CSRA's extensive preclusive effect is a direct manifestation of Congress's intent in designing that statute. "Congress did not neglect expressly to create a judicial remedy where it wanted one to exist. In balancing conflicting needs for efficiency and employee protection, it chose to make certain severe personnel actions, namely 'adverse actions,' subject to judicial review, while leaving other 'personnel actions,' including reassignments, to administrative discretion." *Broadway v. Block*, 694 F.2d 979, 984 (5th Cir. 1982).

Plaintiff argues that *Elgin* and related case law do not foreclose her constitutional claims because the CSRA provides her with no avenue to review by an Article III court. But the broad sweep of CSRA preclusion applies equally to constitutional claims. As the Supreme Court explained in *Elgin*, the "CSRA's objective of creating an integrated scheme of review would be seriously undermined if, as petitioners would have it, a covered employee could challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional." 132 S. Ct. at 2135; *see also id.* at 2136; *Saul*, 928 F.2d at 836-40; *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) (explaining that "there is no question but that the CSRA provides the exclusive remedy" for even alleged constitutional violations "arising out of federal employment"); *Toro v. Napolitano*, 2013 WL 4102168, at *2 (S.D. Cal. Aug. 13, 2013); *Wilborn v. Napolitano*, 2013 WL 1222061, at *3-*4 (S.D. Cal. Mar. 25, 2013).

The Court need not decide whether it would have jurisdiction over plaintiff's constitutional claims even if plaintiff had no other possible recourse, because the CSRA provides plaintiff with potential avenues for review. In that respect, this case is quite

similar to *Saul*, in which the Ninth Circuit concluded that the plaintiff's constitutional claim was precluded by the CSRA. *See* 928 F.2d 829. Plaintiff, like Saul, "could have challenged [her] supervisors' actions under at least two CSRA appeal procedures rather than proceeding directly to federal court." *Am. Fed'n of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1037 (9th Cir. 2007).[4] In fact, the procedures available to plaintiff are identical to those that were available to Saul. *See Saul*, 928 F.2d at 833 (describing the CSRA provisions pertaining to "prohibited personnel practices" and to grievances pursuant to a collective bargaining agreement); *see also Toro*, 2013 WL 4102158, at *2. And contrary to plaintiff's assertions, they do not necessarily preclude access to an Article III court. *See* 5 U.S.C. § 1214(c)(1) (providing for judicial review of an MSPB decisions pertaining to prohibited personnel practices).[5] In short, the CSRA provides plaintiff with a meaningful avenue for administrative (and potentially judicial) review of her constitutional claims, and thus this Court lacks jurisdiction to review those claims.[6]

---

[4] In *Stone*—a decision pre-dating *Elgin*—the Ninth Circuit held that the CSRA does not preclude a constitutional claim for equitable relief where the plaintiff has *no* alternative remedies. *See* 502 F.3d 1027. However, *Stone* explicitly recognized that *Saul* "suggests that employees might be precluded from seeking equitable relief . . . for constitutional violations." *Id.* at 1037. The panel distinguished *Saul* on the ground that the plaintiff there "could have availed himself of alternative mechanisms to pursue his constitutional claim. . . . By contrast, the parties in this case agree that [the plaintiff] has no remedies available under the CSRA . . . and that judicial review is the only means by which he can attempt to vindicate his constitutional rights." *Id.*; *see also Wilborn*, 2013 WL 1222061, at *3 n.1 (explaining the distinction between *Stone* and *Saul*). As explained above, plaintiff here is situated much more similarly to the plaintiff in *Saul*.

[5] *Coleman v. Napolitano*, 2014 WL 4185190 (D.D.C. Aug. 25, 2014), is inapposite for much the same reason that *Stone* does not control. In *Coleman*, the district court's decision that the plaintiff's constitutional claim was not precluded appears to be based on the court's understanding that the CSRA provided the plaintiff with "no forum . . . for review" of those claims. *Id.* at *3.

[6] In stating that plaintiff has certain avenues of review available to her under the CSRA, the government does not take a position on whether plaintiff's claims would ultimately be accepted and successful—that is for the administrative bodies tasked by Congress to resolve federal employment disputes (here, OSC and the MSPB) to decide. But plaintiff cannot circumvent the administrative exhaustion required by the CSRA simply by asserting that her constitutional claims might ultimately be rejected. *See Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433-34 (D.C. Cir. 1996) (discussing exhaustion); *Hardy v. Hamburg*, 2014 WL 5420037, at *11 (D.D.C. Sept. 23, 2014) ("[A]n inability to obtain all of the relief the plaintiffs desire does not excuse their obligation to exhaust their administrative remedies.").

2.    Plaintiff's constitutional claims arise out of her federal employment, and are therefore precluded

To salvage her action, plaintiff now contends that her constitutional claims are not precluded by the CSRA because they pertain to matters outside the workplace. *See* Pl.'s Opp'n at 20-21. Such a contention flies in the face of her own complaint, which is replete with references to actions taken by the very agency for which she is employed and affecting one of the most basic of employment issues, namely, the assignment of her duties.[7] Plaintiff's dispute here is over whether, in her employment as an IJ, she should be precluded from handling certain assignments. That is patently not a matter outside the workplace. Plaintiff's claims are inextricably intertwined with her federal employment. *See Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434-35 (D.C. Cir. 1996). Thus, plaintiff's constitutional claims are a quintessential challenge to an agency's activities in its role as an employer, which is precisely the type of issue that falls within the CSRA's preclusive scope. *See* Defs.' Mem. at 15-16.[8]

Nor can plaintiff circumvent the CSRA on the basis that her claims could arguably be raised separately from any personnel action taken against her. *See* Pl.'s Opp'n

---

[7] *See, e.g.*, Am. Compl. ¶ 1 ("Judge Tabaddor challenges the propriety and constitutionality of a blanket recusal and reassignment order."); *id.* ¶ 4 ("This Complaint seeks to remedy the lawless and discriminatory action on the part of the Justice Department, taken against Judge Tabaddor, who has been adversely treated, simply because of her race and/or national origin and her exercise of her First Amendment rights."); *id.* ¶ 5 ("The blanket recusal order not only required Judge Tabaddor to recuse herself from all cases involving Iranian nationals that were before her at the time the Agency gave its mandate, but it also remains in effect to date."). The Amended Complaint continues in this vein.

[8] *Keeffe v. Library of Cong.*, 588 F. Supp. 778 (D.D.C. 1984), on which plaintiff relies, is both distinguishable and unpersuasive. First, unlike plaintiff here, the plaintiff in *Keeffe* exhausted her administrative remedies. *See id.* at 786 ("Ms. Keeffe may certainly press her claim, since she has already exhausted her administrative remedies."). The court's conclusion that the plaintiff could bring her constitutional claim was based on the limited remedies provided by the CSRA in plaintiff's particular situation. *See id.* at 786-87. As explained above, that portion of the court's holding is inconsistent with *Elgin* and *Saul* (among other cases). In passing, the *Keeffe* court mentioned that plaintiff's conduct took place "on the employee's own time away from the workplace at political conventions," but this observation appears to play little or no role in the court's analysis. *See id.* at 787. In any event, because the plaintiff in *Keefe* was challenging a job transfer, *see id.* at 780, the court's description of the claim as arising outside of the workplace is unconvincing.

at 20. Even if framed as a challenge to the agency's interpretation of 5 C.F.R. § 2635.502(a), her claims are inseparable from the recusal recommendation that she seeks to challenge. Indeed, plaintiff's allegation that EOIR has adopted an unconstitutional interpretation of the regulation is based entirely on the actions taken with respect to her. There is no written guidance or other expression of the challenged interpretation that plaintiff can point to—instead, "the events supporting the constitutional violations alleged" by plaintiff "are a direct result of the defendants' personnel practices challenged by [plaintiff]." *Hardy v. Hamburg*, 2014 WL 5420037, at *12 (D.D.C. Sept. 23, 2014); *see also Weaver*, 87 F.3d at 1434.

In this respect, this case is easily distinguishable from *Weaver*—indeed, *Weaver* supports defendants' position that plaintiff has failed to exhaust her CSRA remedies. There, the plaintiff challenged a written agency policy requiring prepublication review of "all speaking, writing, and teaching material on matters of 'official concern.'" 87 F.3d at 1431. The plaintiff brought her First Amendment challenge before any action was taken against her. *See id.* at 1432. After the plaintiff was subject to a personnel action based on the written policy, she amended her complaint to add claims related to that action. *See id.* The D.C. Circuit held that her claims pertaining to the personnel action were precluded because she had failed to exhaust her remedies under the CSRA. *See id.* at 1433-34. However, the court allowed her original claim to proceed. In so doing, the court emphasized that the claim had existed prior to any personnel action and could be advanced without reference to any such action. *See id.* at 1434. The court also pointed out that the plaintiff "identifie[d] as the 'gravamen' of her case the general challenge to the review requirement, as distinguished from the challenge to the particular personnel action taken against her," and that plaintiff "was 'not really looking for' a 'reversal' of the oral admonishment . . . , but rather was seeking a general invalidation of the review scheme." *Id.* at 1434 n.2.

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

Here, plaintiff's constitutional claims are similar to those that were precluded in *Weaver*. The "gravamen" of plaintiff's complaint is the recusal recommendation. While plaintiff challenges the agency's interpretation of the ethics regulations as overbroad, her "constitutional claim is intertwined with her CSRA claim in the most absolute manner imaginable: it is its sole basis." *Id.* at 1434. Thus, plaintiff's constitutional claims are very much like those that the D.C. Circuit dismissed for a failure to exhaust in *Weaver*. Notably, plaintiff's claims are not a "'pre-enforcement' challenge to a government regulation or rule" that "had *already* been in place *prior to* the government enforcing the regulation or rule against an employee." *Hardy*, 2014 WL 5420037, at *12 (distinguishing *Weaver*). Because plaintiff "do[es] not challenge a regulation or rule that stands independently from the personnel actions of which [she] complain[s]," *id.* (internal quotation marks omitted), "[t]his is not the 'unusual case in which the constitutional claim[s] raise . . . issues *totally unrelated* to the CSRA,'" *id.* (quoting *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990)).[9]

*Elgin* itself is on point in this respect. There, the plaintiffs brought constitutional claims challenging a statute prohibiting people who failed to register for the Selective Service from obtaining federal employment. *See id.* at 2131. The plaintiffs argued that their constitutional claims were not precluded under the CSRA, because they "are 'wholly collateral' to the CSRA scheme," not challenging any "day-to-day personnel actions adjudicated by the MSPB" but instead a categorical bar on Federal service. *Id.* at 2139. But the Supreme Court concluded that the plaintiffs' "constitutional claims are the vehicle by which they seek to reverse the removal decisions," and these claims therefore constitute "a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords." *Id.* at 2139-40. So here,

---

[9] For similar reasons, *Firenze v. NLRB*, 2013 WL 639151 (D. Mass. Jan. 10, 2013), a report and recommendation of a magistrate judge, is also distinguishable. There, the court's decision was based on the determination that that the plaintiff's First Amendment claim was not connected to any personnel action. *See id.* at *8.

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

plaintiff's constitutional claims are inherently about the actions taken by the agency with respect to her as a federal employee.

Finally, as a practical matter, it makes sense that a plaintiff should not be able to circumvent the CSRA simply by framing her claim as a general constitutional challenge rather than an objection to a particular personnel matter. The Court should "refuse[] to permit [plaintiff] to manipulate the jurisdiction of the Court based on [her] 'clever drafting of the complaint' or 'artful pleading.'" *Hardy*, 2014 WL 5420037, at *10 (quoting *Steadman*, 918 F.2d at 967-68); *cf. Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008) ("[A] plaintiff may not escape an exclusive avenue of judicial review through artful pleading."). "[P]laintiff[] cannot bypass the CSRA by merely recasting prohibited personnel actions that fall under the CSRA as constitutional violations such that they fall outside the reach of the CSRA." *Hardy*, 2014 WL 5420037, at *10.[10]

**B.   Plaintiff was required to exhaust her constitutional claims through one of the processes provided by the CSRA**

Despite the broad preclusive effect of the CSRA, plaintiff argues that she was not required to exhaust her constitutional claims. Specifically, plaintiff contends that she was not subject to a "prohibited personnel practice," and thus her claims do not fall within the CSRA's scope. *See* Pl.'s Opp'n at 16-19. She also argues that she was not required to exhaust her constitutional claims at all, as long as she exhausted her discrimination claims. *See id.* at 24-26. These arguments are based on fundamental misunderstandings of the statute. Again, district court review of plaintiff's constitutional claims are precluded by the CSRA, but even those courts that have held—incorrectly, in the government's view (particularly in light of *Elgin*)—that a federal employee raising a constitutional challenge to a personnel action can ultimately seek review by an Article III court have also concluded that the employee must first exhaust her claims through the procedures

---

[10] As explained in the government's opening brief, it does not matter that plaintiff challenges agency action that allegedly affects all IJs. *See* Defs.' Mem. at 17 n.12.

provided by the CSRA. *See Weaver*, 87 F.3d at 1433; *Steadman*, 918 F.2d at 967-68; *see also Irizarry v. United States*, 427 F.3d 76, 77-79 (1st Cir. 2005) (holding that, even assuming that the petitioner could ultimately seek judicial review of his constitutional claim, he was required to exhaust his CSRA remedies); *Karamanos v. Egger*, 882 F.2d 447 (9th Cir. 1989) (dismissing claims because of failure to exhaust CSRA remedies). Plaintiff in this case had at least two potential avenues for administrative review of her constitutional claims—she was entitled to pursue either of those avenues, but she was not entitled entirely to forgo administrative review of such claims.

  1. Whether defendants acted within their authority is a question to be resolved by the CSRA's exclusive remedial scheme, not a basis for evading that scheme

  Plaintiff's first argument against exhaustion is that she was not subject to a "prohibited personnel practice." As explained above, because of the breadth of the CSRA's preclusive effect, this argument largely misses the point. Even if, *arguendo*, plaintiff was not subject to a "prohibited personnel practice" as that term is defined under the statute, her claim still arises from her federal employment, and is thus within the statute's scope. *See, e.g.*, *Saul*, 928 F.2d at 840 ("[T]he preclusive effect of the CSRA sweeps beyond the contour of its remedies."); *Sculimbrene v. Reno*, 158 F. Supp. 2d 1, 6 (D.D.C. 2001) ("[W]hether or not the complained of harm falls within the definition of 'personnel action' in Section 2302 is not relevant to a determination of whether the CSRA governs Plaintiff's claims."). Furthermore, plaintiff does not dispute that she could have raised her claims through the collectively-bargained grievance procedure. Since there can be no dispute that "any matter relating to [her] employment" is broad indeed, 5 U.S.C. § 7103(a)(9)(A), it is little wonder that plaintiff largely ignores the grievance avenue of the CSRA and instead quibbles with the meaning of phrases in the prohibited personnel practice section of the CSRA.

  Plaintiff's contention that she need not exhaust her administrative remedies because her claim might not fit the definition of a "prohibited personnel practice" makes

little sense as a practical matter, in light of Congress's intent to make the CSRA broadly preclusive. If plaintiff were correct, then any employee would be able to circumvent the CSRA and go directly to district court simply by alleging that the challenged personnel action was not within the supervisor's authority, creating a potentially substantial category of cases that would fall outside of the scope of the CSRA—exactly the outcome that Congress sought to avoid when it enacted the statute. In fact, the question of whether a supervisor had the authority to take a particular personnel action is precisely the type of issue that the administrative scheme established by the CSRA is designed to address. *Cf. Elgin*, 132 S. Ct. at 2140 (discussing "the many threshold questions . . . to which the MSPB can apply its expertise"). And indeed, the MSPB has addressed this very question. *See Special Counsel v. Eidmann*, 49 M.S.P.R. 614, 623 (Aug. 16, 1991); *Acting Special Counsel v. Sullivan*, 6 M.S.P.R. 526, 545 (June 8, 1981); *Special Counsel v. Harvey*, 28 M.S.P.R. 595, 608 n.25 (Dec. 6, 1984).

   At bottom, plaintiff's argument is that an administrative claim that she was subject to a prohibited personnel action might be rejected by the Office of Special Counsel (OSC) and/or the MSPB. But an exhaustion requirement that applied only to those claims that are certain to succeed would not be much of an exhaustion requirement. *See Weaver*, 87 F.3d at 1434 ("Weaver also points to the uncertainties in the CSRA remedy— the possible delays and the dependence on a favorable exercise by the OSC of its discretion whether to take the case to the MSPB. But the delays seem no more than the normal concomitant of an exhaustion requirement—perhaps less, in view of the statute's deadline for OSC action."). "Permitting an employee to bypass the OSC entirely would permit the employee to avoid the remedial scheme that Congress enacted, even though nothing in the CSRA suggests that Congress intended resort to the OSC to be optional." *Irizarry*, 427 F.3d at 79. Whatever the outcome of the administrative review might have been, plaintiff was not entitled to circumvent it.

1    Even if the Court were to reach the substantive question of whether anyone had
2    the authority to recommend or require plaintiff's recusal—which, as explained above, it
3    should not—it should reject plaintiff's argument, which is based on her astounding and
4    wholly unsupported view that IJs are not subject to the ethics rules that apply to other
5    Executive Branch employees. *See* Pl.'s Opp'n at 16-19. That is patently wrong on its face.
6    The applicable ethics regulations apply to virtually all Executive Branch employees. *See* 5
7    C.F.R. § 2635.102(h) (defining "employee" as "any officer or employee of an agency,"
8    with limited exceptions); *see also id.* § 2635.101(a) ("To ensure that every citizen can have
9    complete confidence in the integrity of the Federal Government, *each employee* shall
10   respect and adhere to the principles of ethical conduct set forth in this section."
11   (emphasis added)); *id.* § 3801.101 (supplemental DOJ regulations, which apply to all
12   employees).[11]

13   Moreover, even if IJs have some measure of adjudicatory independence, they are
14   not exempt from supervisory authority, as plaintiff suggests. IJs are subject to
15   supervision in many respects. *See U.S. Dep't of Justice Exec. Office of Immigration Review &*
16   *Nat'l Ass'n of Immigration Judges* ("*EOIR*"), 56 F.L.R.A. 616, 617 (Sept. 1, 2000) (explaining
17   that "[s]upervisory responsibility for [IJs] . . . is directly delegated to eight Assistant Chief
18   Immigration Judges"). As particularly relevant here, EOIR managers have the authority
19   to control work assignments to IJs.[12] While an IJ can certainly make the decision to

20   ─────────────────────────
     [11] IJs are employees of the Department of Justice, an Executive Branch agency. *See* 8 C.F.R.
21   § 1003.10(a). They "are non-supervisory career civil servants selected through competitive vacancy
     announcements open to all United States citizens." *Am. Immigration Lawyers Ass'n v. Exec. Office for*
22   *Immigration Review*, 2014 WL 7356566, at *1 (D.D.C. Dec. 24, 2014).

23   [12] *See* 8 C.F.R. § 1003.9(b)(3) (granting the Chief Immigration Judge the authority to "[d]irect the
     conduct of all employees assigned to OCIJ to ensure the efficient disposition of all pending cases,
24   including the power, in his discretion, to set priorities or time frames for the resolution of cases, to
     direct that the adjudication of certain cases be deferred, *to regulate the assignment of immigration judges to*
25   *cases*, and otherwise to manage the docket of matters to be decided by the immigration judges"
     (emphasis added)); *see also* 5 U.S.C. § 7106(a)(2)(B) (general authority of supervisors to assign work). In
26   fact, while the applicable regulations recognize the IJs' independence as adjudicators, they are explicit
     that such independence does not extend further. *See* 8 C.F.R. § 1003.9(c) ("The Chief Immigration
27   Judge shall have no authority to direct the result of an adjudication assigned to another immigration
28

14
─────────────────────────

1   recuse herself from a particular matter, *see, e.g.*, 8 C.F.R. § 1240.1(b), plaintiff cites

2   nothing for the proposition that IJs are unique amongst Executive Branch employees in

3   that recusal decisions are left entirely to their discretion. In fact, an IJ—like any other

4   Executive Branch employee—can be required to recuse herself from a matter, and is

5   subject to discipline for a failure to do so. *See, e.g.*, 5 C.F.R. § 2635.106. In this respect,

6   IJs simply are not like Article III judges, who make recusal decisions independently. *See*

7   28 U.S.C. § 455.[13]

8       Plaintiff's argument is also based on an unduly constrained and formalistic reading

9   of the statute. According to plaintiff, a personnel action can only be a prohibited

10  personnel practice where the individual who took the action was acting pursuant to a

11  specific delegation of authority. Notably, plaintiff does not cite to a single case in

12  support of her interpretation. In fact, the MSPB—whose interpretation of the CSRA is

13  entitled to deference, *see Weaver*, 87 F.3d at 1433; *Kaplan v. Conyers*, 733 F.3d 1148, 1177

14  (Fed. Cir. 2013)—has rejected plaintiff's narrow interpretation of the statute. As the

15  Board has explained, "the concept of supervisory or personnel authority under section

16  2302(b) is to be broadly construed." *Eidmann*, 49 M.S.P.R. at 623. "A specific delegation

17  of authority to recommend or take a personnel action is not a prerequisite for liability

18  under section 2302(b)." *Id.*[14]

19

20  ───────────────────────

    judge, *provided, however, that nothing in this part shall be construed to limit the authority of the Chief Immigration*

21  *Judge in paragraph (b) of this section.*" (emphasis added)).

22  [13] For this reason, among others, *United States v. Odeh*, No. 13-cr-20772 (E.D. Mich. Oct. 22, 2013), on

23  which plaintiff relies, *see* Pl.'s Opp'n at 2-3, is entirely irrelevant. Plaintiff's arguments regarding *Odeh* also go to the merits of her claims, which, again, are irrelevant at this stage.

24  [14] *See also Sullivan*, 6 M.S.P.R. at 545 ("A narrow reading of the statute which would insulate supervisory

25  employees, in the absence of specific formal delegations, from accountability for official actions that result in prohibited personnel practices would ignore its remedial purpose and the actual workings of

26  organizations."); *Harvey*, 28 M.S.P.R. at 608 n.25 ("We reject Harvey's argument that he could not violate any provision of section 2302(b) because that section applies only to employees who have authority to

27  take, recommend, or approve a personnel action and he had no such authority."); *Mahtesian v. Lee*, 406 F.3d 1131, 1134 (9th Cir. 2005) (describing a prohibited personnel practice as "any 'personnel action'

28

Finally, even if no one had the authority to require plaintiff to recuse herself—which, as explained above, is not the case—the relevant provision of the CSRA also specifically encompasses the authority to "recommend" a personnel action. 5 U.S.C. § 2302(b). Thus, OGC acted within its authority when it recommended recusal.

### 2. Section 7121 of the CSRA does not excuse plaintiff from exhausting her constitutional claims

Plaintiff also relies on another section of the CSRA, 5 U.S.C. § 7121(d), for the proposition that she was not required to exhaust her constitutional claims. But the provision says no such thing. *See* Pl.'s Opp'n at 24-26. Pursuant to this section, "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). In other words, "[w]here a prohibited personnel practice falls within the scope of a negotiated grievance procedure, the CSRA gives the aggrieved employee the option of pursuing either contractual or OSC remedies, but not both." *Saul*, 928 F.2d 835; *see also Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 768 (9th Cir. 1991). Section 7121(d) has absolutely nothing to say about the exhaustion of statutory procedures—it only prohibits the splitting of claims between statutory procedures and negotiated grievance procedures.

Thus, plaintiff had two potential CSRA avenues for review of her constitutional claims—the OSC route or the negotiated grievance procedure. She chose to exhaust her discrimination claims through the EEO procedures, as was her right. But such EEO proceedings can *only* have exhausted her discrimination claims, not her constitutional claims (which, in any event, she did not even attempt to raise during the course of the EEO proceedings). Plaintiff was required to exhaust all of her claims—*including her*

---

taken for an improper motive by someone who has authority to take personnel actions"); *Hall v. Clinton*, 235 F.3d 202, 205-06 (4th Cir. 2000).

*constitutional claims*—through statutory procedures or the negotiated grievance procedure. None of the cases cited by plaintiff suggest that she need not have administratively exhausted her constitutional claims—to the contrary, they all emphasize the CSRA's exhaustion requirement. *See Macy v. Dalton*, 853 F. Supp. 350 (E.D. Cal. 1994); *Santos-Reyes v. Gonzales*, 2007 WL 988182, at *4 (N.D. Cal. Apr. 2, 2007). To exhaust non-discrimination claims, a plaintiff must present them to OSC or the MSPB, depending on the type of claim. *See Sloan v. West*, 140 F.3d 1255, 1260 (9th Cir. 1998) (stating that if a complainant "wishes to preserve both claims," then "he or she must file the appeal with the MSPB, or be deemed to have waived the non-discrimination claim").

Under the theory espoused by plaintiff, any Title VII litigant could simply tack on a constitutional claim in district court. Not so. If plaintiff's constitutional claims are intertwined with her discrimination and retaliation claims, then they are precluded by *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). *See* Defs.' Mem. at 12 n.7. If they are separate claims, then they to be exhausted as such. Because plaintiff entirely failed to exhaust her constitutional claims, they cannot be heard by this Court.[15]

### C.    Claims arising under the Ethics in Government Act are not exempt from the CSRA's preclusive effects

Finally, plaintiff claims that Congress, *sub silentio*, created an exception to the CSRA's broad preclusive effect. This novel argument—in support of which plaintiff cites no case law—relies on a provision of the Ethics in Government Act (EGA), which states: "In promulgating rules and regulations pertaining to financial disclosure, conflict of interest, and ethics in the executive branch, the Director shall issue rules and

---

[15] Plaintiff's reliance on *Kloeckner v. Solis*, 133 S. Ct. 596 (2012), is misplaced. *Kloeckner* involved a "mixed case"—that is, a case alleging (1) "a personnel action serious enough to appeal to the MSPB" and (2) "that the action was based on discrimination." *Id.* at 601. As explained by the Supreme Court, mixed cases are subject to special procedures, and are directly appealable to district court once administratively exhausted. *See id.* at 601, 604. Because plaintiff is not alleging a personnel action serious enough to appeal directly to the MSPB (but, rather, must seek redress from OSC), this is not a mixed case, and thus *Kloeckner* does not apply. Nor does *Kloeckner*—even if it were applicable—suggest that plaintiff would be excused from exhausting all of her claims, including her constitutional claims, before proceeding to district court.

regulations in accordance with chapter 5 of title 5, United States Code. *Any person may seek judicial review of any such rule or regulation.*" 5 U.S.C. app. § 404 (emphasis added) (hereinafter referred to as "section 404"). Section 404 appears to be the type of general language used by Congress to give standing to anyone to bring a challenge to agency action, within the limits of Article III. *See* H.R. Rep. No. 95-1756, at 4389 (1978) (Conf. Rep.), 1978 WL 8586, at *73 (describing purpose of section 404), *see also, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 161-66 (1997) (discussing a similar provision of the Endangered Species Act). For several reasons, it is irrelevant to the case at hand.

First, plaintiff does not directly challenge rules and regulations promulgated pursuant to the EGA. Instead, she claims that EOIR has a policy of interpreting and applying such regulations in a manner that violates the First Amendment. *See, e.g.*, Am. Compl. ¶¶ 75, 78. Because plaintiff does not actually seek judicial review of a rule or regulation promulgated pursuant to the EGA, section 404 is inapplicable to her claims.

Second, even if plaintiff had directly challenged such rules and regulations, section 404 would not allow plaintiff to circumvent the CSRA. The purpose of section 404 is to provide standing to challenge certain rules and regulations issued by the Office of Government Ethics. Of course, Congress cannot legislate around the requirements of Article III, but it can abrogate certain prudential standing doctrines. *See Bennett*, 520 U.S. at 162. However, this Court lacks jurisdiction over plaintiff's constitutional claims not because plaintiff lacks standing to raise them, but because they are precluded by the exclusive remedial scheme of the CSRA. Section 404 simply has no bearing on the question of whether plaintiff must exhaust her administrative remedies. *Cf. Am. Bird Conservancy*, 545 F.3d 1190 (rejecting the argument that a citizen suit provision granting access to district court allowed the plaintiff to bypass the provision of another statute vesting exclusive jurisdiction in the court of appeals).

Finally, it is worth noting that the EGA became law a mere 13 days after the CSRA. It is not plausible that Congress intended the very general language of section

404 to disrupt the carefully crafted, detailed, exclusive remedial scheme that it had created less than two weeks earlier. As the Supreme Court has repeatedly recognized, "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotation omitted); *see also, e.g., EC Term of Years Trust v. United States*, 550 U.S. 429, 433-34 (2007) (citing cases). Had Congress intended to create an exception to the CSRA, it would have done so explicitly.[16]

## II.    Plaintiff's Title VII Claims Should Be Dismissed

### A.    Plaintiff's Title VII discrimination claim should be dismissed because it was not timely exhausted and because plaintiff has failed to adequately plead discrimination

#### 1.    Plaintiff did not contact an EEO counselor within 45 days

As defendants explained in their initial brief, plaintiff failed to timely exhaust her Title VII discrimination claim—specifically, she failed to contact an EEO counselor within 45 days of the alleged discriminatory act. *See* Defs.' Mem. at 18-21. In response, plaintiff concedes that she failed to satisfy this requirement with respect to the July 5, 2012 email in which OGC initially recommended that plaintiff recuse herself; but she argues that the August 28, 2012 email, in which OGC reiterated its recommendation, was a discrete act of discrimination that restarted the clock for exhaustion. *See* Pl.'s Opp'n at 26-28. But, on the face of the Amended Complaint, plaintiff's argument fails. Plaintiff does not dispute that she was on notice of the allegedly discriminatory action— the recusal determination—upon receipt of the July 5 email. The August 28 email was

---

[16] Plaintiff argues that defendants "should be foreclosed from raising any argument with respect to section 404 on reply" because "[t]hey were put on notice of the provision by the Complaint but failed to address it in their Motion." Pl.'s Opp'n at 22 n.13. That argument is puzzling, to put it mildly. Defendants explained in their opening brief that plaintiff's constitutional claims are precluded by the CSRA; plaintiff responded in part by relying on section 404; and defendants discuss it here only in reply to plaintiff's argument. That is the purpose of a reply brief. Were defendants using section 404 to raise an affirmative argument in support of their motion to dismiss, they would have been required to do so in their opening brief—but defendants' position is that section 404 is irrelevant. Finally, because CSRA preclusion goes to the Court's subject matter jurisdiction, arguments relating to this issue cannot be waived. *See, e.g., Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (per curiam).

not a discrete act, but was "merely the 'delayed, but inevitable, consequence'" of OGC's recusal recommendation. *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012)).

As the Supreme Court explained in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. However, in order to be the basis for a timely filed claim, a later discrete act must be "independently discriminatory." *Id.*; *see also Ervine*, 753 F.3d at 870. Where the later act is the "inevitable consequence" of an initial act, it is not a discrete act, and the timeliness of filing should be determined based on the occurrence of the initial act. *See Ervine*, 753 F.3d at 870; *Pouncil*, 704 F.3d at 576-81; *Knox v. Davis*, 260 F.3d 1009, 1013-15 (9th Cir. 2001).

Here, the alleged discriminatory action that plaintiff challenges occurred on July 5, when OGC first recommended that, based on the relevant ethics regulation as applied to the facts and circumstances of plaintiff's situation, plaintiff should recuse herself from cases involving individuals from Iran if she chose to attend the event at the White House. *See* Am. Compl. ¶ 33. When plaintiff decided to attend the event despite OGC's recommendation, OGC reiterated its earlier advice on August 28 and in other, subsequent emails. *See id.* ¶ 35. Thus, the August 28 email merely was the logical and inevitable result of the July 5 email. Indeed, as of July 5, as plaintiff herself acknowledges, she was well aware of EOIR's determination, and believed that it was discriminatory. *See id.* ¶ 34. If plaintiff's argument were correct, then a complainant could always artificially extend the deadline to contact an EEO counselor simply by seeking clarification of a prior allegedly discriminatory action. Because the August 28 email simply reiterated the recusal recommendation, the time for filing an initial EEO claim began as of the date she received the July 5 email.[17]

---

[17] Plaintiff continues to insist that the August 28 email escalated OGC's advice from a recommendation to an "order" or "directive." *See* Pl.'s Opp'n at 28. As explained in the government's initial brief, that characterization is incorrect, even on the face of the Amended Complaint. *See* Defs.' Mem. at 19-20 &

In many respects, this case is analogous to cases in which the Supreme Court has concluded that an allegedly unlawful termination of employment occurs at the time that the employee is informed that he is being discharged, rather than the time at which the discharge actually occurs. *See Morgan*, 536 U.S. at 111 (discussing *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)); *id.* at 112-13 (discussing *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)); *Knox*, 260 F.3d at 1014 (discussing *Chardon v. Fernandez*, 454 U.S. 6 (1981)); *see also Lyons v. England*, 307 F.3d 1092, 1107 n.9 (9th Cir. 2002); *Pouncil*, 704 F.3d at 577-78; *Ervine*, 753 F.3d at 870. This is because "the discriminatory act *occurred* on the date of discharge," *Morgan*, 536 U.S. at 111, and all the consequences that later flow from that decision are the result of that earlier, allegedly discriminatory act. Similarly, here, the determination that plaintiff should recuse herself from cases involving Iranian nationals if she attended the event at the White House was communicated to her on July 5. All other events in this case inevitably flowed from that determination.[18] Thus, plaintiff was required to contact an EEO counselor within 45 days of receiving the July 5 email.

### 2. Plaintiff has not adequately pled that she was subject to an adverse employment action

In their initial brief, defendants explained that plaintiff has not alleged that she suffered an adverse employment action. *See* Defs.' Mem. at 21-24. In short, plaintiff has alleged, at most, a very minor "readjustment of [her] job assignments," which, on its face does not rise to the level of an adverse employment action. *Luox v. Maire*, 337 F. App'x 695, 697 (9th Cir. 2009); *see also Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)

---

n.15. However, even if the August 28 email could be characterized as an order, it would still be the inevitable consequence of OGC's earlier determination that plaintiff should recuse herself if she chose to attend the event at the White House, and thus could not be considered a discrete act.

[18] In this respect, this case is distinguishable from cases like *Pouncil*, where the Ninth Circuit determined that the application of a policy in 2002, and the later application of the same policy in 2008, were discrete acts. *See* 704 F.3d at 581. There, the court explained that "the 2008 denial relied on a *new application* of the regulation to a *new request*" from the plaintiff. *Id.* (emphasis added). Here, by contrast, all of the allegedly discriminatory acts stem from a single application of the ethics regulations to a single event—plaintiff's attendance of the event at the White House.

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW

1  (noting that an adverse action is a "significant change in employment status, such as

2  hiring, firing, failing to promote, reassignment with significantly different responsibilities,

3  or a decision causing significant change in benefits").

4        In her Amended Complaint and her most recent brief, plaintiff focuses on alleged

5  intangible and subjective harms—specifically, "anguish and humiliation," Am. Compl. ¶

6  45, and "stigma," Pl.'s Opp'n at 30. But the government cited to a number of cases that

7  establish that the types of intangible injuries of which plaintiff complains are not

8  cognizable adverse employment actions. *See* Defs.' Mem. at 23; *see also, e.g., Forkkio v.*

9  *Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) ("Purely subjective injuries, such as

10 dissatisfaction with a reassignment, . . . or public humiliation or loss of reputation, . . .

11 are not adverse actions." (internal citations omitted)); *McKinnon v. Twin Rivers Unified Sch.*

12 *Dist.*, 2014 WL 5473244, at *2 (E.D. Cal. Oct. 28, 2014) ("Although plaintiff complains

13 that the transfer subjected her to humiliation and loss of prestige, plaintiff's subjective

14 preference for her prior position is insufficient to state a prima facie case for

15 discrimination."). Plaintiff does not even attempt to distinguish these cases. Nor does

16 plaintiff cite to a single case in which a court found an adverse employment action in a

17 situation similar to hers.[19] Tellingly, she relies on "other legal contexts" to support her

18 claim that "stigma" can amount to an adverse employment action. Pl.'s Opp'n at 30. In

19 short, plaintiff's alleged harms are a far cry from the types of tangible injuries that

20 amount to an adverse employment action under Title VII.[20]

21 ───────────────────

22 [19] *Deweese v. Cascade Gen. Shipyard*, 2011 WL 3298421 (D. Or. May 9, 2011), involved a litany of adverse
   employment actions. *See id.* at *6. The court found that the claim of "segregation" amounted to an

23 adverse employment action in part because it involved physical separation from other workers and
   being ignored by supervisors. *See id.* at *10-*11. Plaintiff raises no such claims here.

24 [20] Plaintiff argues that defendants' claim that plaintiff has not alleged an adverse employment action "is

25 controverted by Defendants' position that the CSRA precludes Judge Tabaddor's constitutional claims
   precisely because the recusal order constitutes a '*significant change* in duties, responsibilities or working

26 conditions' . . . such that the CSRA is triggered." Pl.'s Opp'n at 28. But plaintiff's constitutional claims
   arise out of her federal employment, and thus are precluded by the CSRA regardless of whether her

27 recusal amounted to a "significant" change in her duties, responsibilities, or working conditions. In any
   event, plaintiff *alleges* that it was significant—it is for OSC and the MSPB to determine whether that is

28

                                      22

### B.    Plaintiff's retaliation claims also fail

    1.    Plaintiff's claim that she was denied the ability to be compensated for teaching was not sufficiently related to the claims in her administrative charge, and thus was not exhausted

In order for a retaliation claim to be exhausted, it must have been included in the administrative charge or be "like or reasonably related to the allegations contained" in the charge. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.

*Id.* The purpose of this requirement is to ensure that the agency has an opportunity to investigate and, if necessary, redress the plaintiff's allegations. *See id.*; *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003); *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481-82 (7th Cir. 1996).

Plaintiff claims that, in retaliation for protesting her recusal, she was denied the ability to receive compensation for teaching a course on immigration law. She admits that no such claim was included in the administrative charge, but asserts that it is sufficiently similar to the retaliation claims in the charge such that it should be deemed exhausted. *See* Pl.'s Opp'n at 31-32. While a plaintiff need not amend her charge to encompass "new acts occurring during the pendency of the charge before the EEOC," this only applies to claims of discrimination "like or reasonably related to the allegations of the EEOC charge." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973). But plaintiff's Amended Complaint is devoid of any allegations from which the Court could conclude that this particular claim was reasonably related to any of the

---

the case. However, it is for this Court to determine whether plaintiff has been subject to an adverse employment action for Title VII purposes—for the reasons explained, she has failed to allege as much.

allegations in her charge, such that the agency could have been expected to investigate the claim. *See B.K.B.*, 276 F.3d at 1100. Plaintiff does not allege that the ethics opinion regarding compensation for teaching at UCLA was related "to the facts that form the basis of the discrimination in the charge" and "occur[ed] within the time frame of the events alleged in the [EEO] charge." *Vasquez*, 349 F.3d at 645. As such, "[a] reasonable investigation by the [agency] would not have encompassed these allegedly retaliatory acts." *Id.*; *see also Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002).

>          2.       Plaintiff has not adequately alleged retaliation

>>            a.    *Two of the alleged retaliatory actions are not adverse actions for purposes of a retaliation claim*

As defendants explained in their initial brief, neither the alleged "escalation" of the recusal recommendation to an order nor the allegation that plaintiff was prevented from using her title (with an appropriate disclaimer) when attending outside speaking engagements rises to the level of a retaliatory adverse action. *See* Defs.' Mem. at 27-28. Plaintiff does not effectively refute defendants' arguments. As to the alleged "escalation," plaintiff simply states that "[f]or all the reasons that this action constitutes an adverse employment action . . . , it also constitutes retaliation." Pl.'s Opp'n at 33. Of course, it is defendants' position that plaintiff was not subject to an adverse employment action. And as to the claim that plaintiff was prevented from using her title at outside speaking engagements, plaintiff simply states in her brief that "[m]any of these [outside speaking] opportunities arise in large measure because the Judges are Judges, and instantly garner respect from the legal community at large. To deny Judge Tabaddor the use of her title . . . undercuts her ability to participate in these activities." *Id.* However, these allegations of harm are notably absent from plaintiff's Amended Complaint. *See, e.g.*, *Conley v. Stockman Bank*, 2014 WL 5147721, at *7 (D. Mont. Oct. 14, 2014); *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the Union can prove facts that it has not

alleged."). Nor is it clear why such a restriction, which would have allowed plaintiff to attend events in her personal capacity, would have dissuaded speaking invitations.

> *b.*   *Plaintiff has not alleged a causal link between protected activity and the denial of her ability to be compensated for teaching a course at UCLA*

Finally, plaintiff alleges that the ethics opinion recommending that she not receive compensation for teaching at UCLA was retaliatory. But the only fact that she alleges to suggest a causal link between that ethics opinion and protected activity is that the ethics opinion came after she filed her EEO complaint of discrimination. *See* Am. Compl. ¶¶ 73, 98. As defendants explained in their initial brief, where adverse action follows closely on the heels of protected activity, timing alone "can provide strong evidence of retaliation." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2004). "But timing alone will not show causation in all cases"—temporal proximity is only sufficient to support a claim of retaliation where the allegedly retaliatory action "occurred fairly soon after the employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003); *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601 (9th Cir. 2013); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006). Because plaintiff does not say how soon after the events that gave rise to this case she was allegedly denied the ability to be compensated for teaching an immigration course, she has not provided sufficient facts in her Amended Complaint to support her claim of retaliation.[21]

## CONCLUSION

For the reasons stated herein, the Court should dismiss all of plaintiff's claims.[22]

---

[21] Plaintiff's contention that "[t]here are no other significant intervening events to explain Defendants' changed position—there was no Justice Department policy change, no substantial change to the nature of the course," Pl.'s Opp'n at 34, is not contained in the Amended Complaint.

[22] If some or all of plaintiff's Title VII claims survive this motion to dismiss, then all of the defendants except for Attorney General Holder, in his official capacity, should be dismissed from the case. *See* Defs.' Mem. at 30 n.20.

Date: April 1, 2015                    Respectfully submitted,

                                       BENJAMIN C. MIZER
                                       Acting Assistant Attorney General

                                       SUSAN K. RUDY
                                       Assistant Branch Director
                                       Federal Programs Branch

                                       /s/ Benjamin L. Berwick
                                       BENJAMIN L. BERWICK
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave., NW
                                       Washington, DC 20530
                                       Tel: (202) 305-8573
                                       Fax: (202) 616-8470
                                       Benjamin.L.Berwick@usdoj.gov

                                       *Attorneys for Defendants*

Reply in Support of Motion To Dismiss - No. 2:14-cv-6309-GW-CW